Peniston v. Schlude.

---

PENISTON et al., Appellants, v. SCHLUDE.

Division One, December 24, 1902.

1. **Ejectment.** Ejectment is an action at law.

2. ——: PRACTICE: FINDING OF FACTS. Where no instructions are asked by either party in an action at law, a finding of facts by the trial ·court sitting as a jury will not be reviewed by the appellate court if there is any substantial evidence to support it.    Judgments are not reversed on the facts of a law case except where they are so manifestly and flagrantly wrong as to shock the judicial sense of right.

3. ——: ——: FINDING OF FACTS IN THIS CASE. In this case the question of fact was whether or not a paternal uncle of a certain minor, through whom both parties claim, died prior to her death, without any closer relatives than uncles and aunts, in 1861; and the finding by the trial court being that such uncle died prior to her death, and there being substantial evidence upon which to base that finding, and also substantial evidence upon which a contrary finding might have been based, this court will not interfere.

4. ——: FINDING OF FACTS: HEARSAY EVIDENCE AS TO BIRTH AND DEATH. The testimony of surviving relatives of the person through whom plaintiffs claim title, and of persons who have no interest in the case, as to statements made by members of his family concerning his birth and death, although hearsay, is admissible.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

AFFIRMED.

*Thos. B. Crews, W. S. Shirk* and *G. W. Barnett* for appellants.

(1)   The court erred in finding for the defendants in this case and in finding that Pinkney Sublette died prior to 1861, the date of the death of Fannie Sublette, the common source of title of both parties here.   If Pinkney Sublette died subsequent to the date, then the plaintiffs, as his heirs, are entitled to recover, and the sole issue in this case is whether Pinkney Sublette died prior or subsequent to 1861.   There is no presumption in this case that Pinkney Sublette was dead in the year 1861. Revised Statutes 1899, section 3144, provides that if any person who shall have resided in this State go from and do not return to this State for seven successive years, he shall be presumed to be dead in any case where his death shall come in question, unless proof be made that he was alive within that time. This presumption is not an absolute one, but is conditioned that no proof is made that he was alive, and when such proof is made, then there is no presumption at all, but the matter remains as though no presumption existed.   It is simply a question of fact as to whether or not the party is dead or alive, and the general presumption prevails that a person once shown to be alive continues so until proven dead, and the burden of proving him dead is upon the party asserting it.   The presumption is not an absolute one, but is subject to be rebutted by proof or by counter-presumptions.   Dickens v. Miller, 12 Mo. App. 513.   (a)   The burden is on the defendants not only to show the disappearance but silence which remains unexplained. Beigler v. Supreme Council, 57 Mo. App. 423.   And it must be under circumstances which show that the absence was not voluntary. (b) There is no presumption of death on account of absence from the State except where the party leaves with an intention to return.   Hancock, Admr. v. Ins. Co., 62 Mo. 26; White v. Mann, 26 Me. 361.   There is no evidence here that Pinkney Sublette ever intended to return to Missouri.   The statute which provides that

absence without returning for seven years is presumption of death, was intended to apply, of course, only to cases where parties temporarily leave the State with intention to return, such as cases where their family remain here and their business affairs are here and they leave for some temporary purpose and are not heard of again for seven years. (c) Absence of a resident of this State for seven years is presumption of death, not absence of a non-resident, as in this case. Wheelock v. Overshiner, 110 Mo. 100. (d) Where a person is heard from or known to be alive the presumption fails. 1 Am. and Eng. Ency. of Law (1 Ed.), p. '37. (2) The burden of proof was upon defendant to show that Pinkney Sublette was dead in the year 1861, and there is no evidence whatever to establish this, but abundant evidence to establish the death subsequent to that date, and, therefore, the court erred in its finding that he died prior to 1861. The finding of the court below can not be sustained unless based upon evidence. Hubbard v. Fuchs, 164 Mo. 426; Gannon v. Gas Co., 145 Mo. 543. (3) The only pretended testimony as to the death of Pinkney Sublette prior to the year 1861 is that of witness John S. Shaw as to conversation he had with William Sublette, a brother of Pinkney's, in the year 1842, in which William Sublette spoke of his brother being dead, but did not state any facts showing that he had any knowledge of his death. This testimony was wholly incompetent and irrelevant and constituted no evidence tending to show that Pinkney Sublette was dead. This is not a matter of family pedigree. The fact of his death is to be proved by competent evidence, like any other fact, by witnesses who knew the facts. The fact that Pinkney Sublette was believed to be dead by relatives is irrelevant, as the question is not one of pedigree. 7 Am. and Eng. Ency. of Law (1 Ed.), p. 74, n. 2, subd. B; Whittuck v. Walters, 4 Carrington & Payne, 375. (4) And even in case of pedigree, where declarations are admissible, they are only admissible where the deceased declarant is shown to have means of knowledge, and William Sublette was not shown to have any knowledge

whatever as to whether his brother was dead or alive. 11 Am. and Eng. Ency. of Law (2 Ed.), p. 522; also, vol. 9, p. 9.

*Bryan & Christie* for respondent.

(1) There was evidence that Pinkney W. Sublette died prior to May 16, 1861, the date of Fannie Sublette's death. (2) The evidence that Pinkney W. Sublette died prior to May 16, 1861, was introduced without objection, and was competent. Copes v. Pearce, 7 Gill 247; Cuddy v. Brown, 78 Ill. 415; Jackson v. Cooley, 8 Johns. (N. Y.), 128; Strickland v. Poole, 1 Dall. (Pa.), 14; Smith v. Brown, 8 Kans. 608; Dawson v. Mayall, 45 Minn. 408. (3) The burden was on appellants to prove the death of Pinkney W. Sublette, paternal uncle of Fannie Sublette, and that his death occurred after May 16, 1861. They were bound to rebut the presumption of his death. R. S. 1889, sec. 3144; Wheelock v. Overshiner, 110 Mo. 100; Lajoye v. Primm, 3 Mo. 529; Hancock v. Ins. Co., 62 Mo. 26; West v. Bretelle, 115 Mo. 653; Leimers v. Schrader, 14 Mo. App. 348; Foster v. Evans, 51 Mo. 39; Roberson v. Railroad, 152 Mo. 382. (4) Appellants wholly failed to prove that Pinkney W. Sublette, paternal uncle of Fannie Sublette, died after May 16, 1861. While appellants introduced evidence tending to show that a person bearing the name of Pinkney W. Sublette died in 1865, this evidence showed also that the person of that name, who died in 1865, was not the same Pinkney W. Sublette who was shown to have been the paternal uncle of Fannie Sublette.

MARSHALL, J.—Ejectment for lot No. 1 of City Block No. 4037, in the city of St. Louis, fronting 155 feet on the south line of Pattison avenue, by a depth of 170 feet, and bounded west by Macklind avenue. The suit was begun on November 16, 1897. The petition is in the usual form, and lays the ouster as of December 1, 1892. The answer is a general denial. The case was

tried by the circuit court, a jury being waived. No instructions were asked by either party, but at the request of the plaintiffs the court made a special finding of facts, which is as follows:

"In compliance with a request for a finding of facts in the above entitled cause, the court finds the facts to be as follows:

"First. That Frances E. Sublette (daughter of Solomon P. Sublette and Frances S. Sublette, nee Hereford), died single and unmarried, on May 16, 1861, and that at the time of her death she was seized in fee of the property in controversy, and at said time she left no children or their descendants, nor father, mother, brother or sister, or their descendants, her surviving. She left surviving her, one maternal grandmother and six maternal uncles and aunts, through whom defendants claim title.

"Second. The plaintiffs claim title to a portion of one undivided eighth of said property, as heirs at law of Pinkney W. Sublette, who was a paternal uncle of the said Frances, daughter of Solomon P. Sublette.

"Third. The court finds that the said Pinkney W. Sublette died long prior to May 16, 1861, and left no descendants him surviving.

"It follows, as a matter of law, that plaintiffs are not heirs of said Frances E. Sublette, and have no title to the premises in controversy under the statute of descents and distribution. Judgment for defendants."

From the judgment the plaintiffs appealed. The evidence adduced at the trial is very voluminous and covers over three hundred printed pages. In the view herein taken of the case it is not necessary to state it here. So much as is essential to the determination of the case by this court will be referred to in the course of the opinion.

I.

This is an action at law. No instructions were asked by either party. The case went off on a simple

and single question of fact in the lower court, to-wit, whether or not Pinkney W.. Sublette, under whom the plaintiffs claim, survived his neice, Frances E. Sublette, who died on May 16, 1861, and under whom the defendant claims title.   The trial court found as a fact that Pinkney W. Sublette predeceased Frances E. Sublette, and that finding of fact will not be reviewed by this court, if there is any substantial evidence to support it.   [James v. Ins. Co., 148 Mo. 1.]   The only question, therefore, open to review is whether there is any substantial evidence to support the finding of facts.

The controversy is this:   In 1857 Solomon P. Sublette died intestate seized of the property in suit, together with other property, leaving his wife and two children, Frances E., aged about four years, and William Hugh, aged about fourteen months.   The widow survived him for only about one month, and the infant son, William Hugh, died about two months after the widow.   Thus Frances became the owner of the property.   She died on May 16, 1861, aged about nine years, of course intestate and without issue.   She left surviving as her nearest of kin, her maternal grandmother and six uncles and aunts on the maternal side. So far as was then known she had no living relatives on her paternal side.   The grandmother, uncles and aunts had the property partitioned, and the property in suit is part thereof and is now owned by the defendant, who acquired it by mesne conveyance.

Nothing was heard of any claim to it until November 16, 1897, when this suit was begun, and then for the first time it was asserted that Solomon P. Sublette had a brother named Pinkney W. Sublette, who had lived in the far west, among the Indians, nearly all his life, and that he was alive when Frances died in 1861, and consequently was entitled, as her uncle on the paternal side, to share in her estate with the grandmother, uncles and aunts on the maternal side, and in this way was entitled to a one-eighth interest in the property; that Pinkney died in 1865, at Fontenelle,

Wyoming, and that the plaintiffs are the grantees of the next of kin of said Pinkney.

On the other hand, the defendants claim that Solomon had a brother Pinkney, but that he predeceased Frances, and, hence, was not one of her heirs, and that the Pinkney W. Sublette, who died in Wyoming in 1865, was not the brother of Solomon, but some one else of the same name.

At the trial the plaintiffs undertook, primarily, to prove that Pinkney was alive in 1861, when Frances died. In support of their claim, they adduced the following testimony:

John R. Clopton, of Sedalia, testified that he went west in 1864, and at a crossing of the Yellowstone river he met a white man with a band of Indians, whom his guide called Pinkney Sublette, and others called Bill Sublette; that they were together five or six hours; that he had never known him before and never met him afterwards.

James S. McKinney, formerly of Callaway county, testified that he went west in 1863, and had spent much of his time there since; that in 1865 he was working for a Mr. Brown who lived on Green river, and owned a ferry between Fontenelle and LaBarge creeks; that he met there a man who said his name was Pinkney Sublette, and who further said he was a brother of William, Solomon and Andrew Sublette; that the man was sick; that he died about a mile and a half above the mouth of the Fontenelle; that he did not attend the funeral, but saw the grave afterwards. [The plaintiffs showed that William Sublette died in 1845, Andrew died in 1854, and Solomon died in 1857.] The witness further testified that he knew Solomon, William and Andrew Sublette, and was related to them.

John B. Wade, of Sweetwater county, Wyoming, testified that he went west in 1850; knew Pinkney Sublette; met him on Henry's Fork of Green river; and several times on the Fontenelle; saw him last in July, 1862; stayed all night with him; did not know when he died.

Henry Perry, of Uinta county, Wyoming, testified that he went west in 1850; that he met a man named Picknin or Pickin Sublette at Fort Bridger, in 1863; was in camp with him for several days; next saw him on Green river in the summer of 1864; that Sublette lived on the Fontenelle; did not know when he died.

Charles W. Holden, of Fontenelle, Wyoming, testified that he settled at Fontenelle, Wyoming, in October, 1877, and has resided there ever since; that he knew of a solitary grave near the Fontenelle creek, about a mile from where it empties into Green river; that there was a stone standing near the grave with the letters, "P. W. S.," and below them the letter "D" and the figures "1865," carved on it; that it stood there until 1889 or 1890; that he never knew whose grave it was.

Thomas B. Crews, one of the attorneys for the plaintiffs in this case, testified that he went west in the fall of 1897 in the interest of the plaintiffs; that he was present when the grave aforesaid was opened and that they found a human skeleton in the grave; he also testified to the stone and the letters and figures on it.

Clarence and Howard and Misses Ella and Minnie Holden, sons and daughters of Charles W. Holden, and Miss Cora House, their guest, testified that they were present when the grave was opened, and that they saw the stone, with the letters and figures aforesaid, and the human skeleton.

This was the substance of the evidence adduced by the plaintiffs bearing upon the date of the death of Pinkney W. Sublette.

On the other hand, the defendants introduced the following evidence:

John L. Shaw testified that he knew William Sublette, and Pinkney Sublette; that he went to school with Pinkney, in St. Charles, Missouri; that in 1828 or 1829, William Sublette came to the school and took Pinkney away and took him west with him; that Pinkney was then sixteen or seventeen years of age, and was the

biggest boy in his crowd; that Pinkney never returned from the west, and that in 1842 William Sublette told him, the witness, that Pinkney had been killed by the Indians; and that the witness understood from William Sublette that Pinkney and one companion left the trapping party and that the companion had returned to the party, but that Pinkney did not return because he had been scalped by the Indians.

Mrs. Mary W. Moore, a first cousin to Pinkney, a witness for plaintiffs, testified that about 1847 she had a conversation with Andrew, an older brother of Pinkney and: "He said the Indians attacked them and all of them made their escape but Pinkney. I asked the question: 'Was he killed?' They said they didn't know. I said: 'Didn't you go back and hunt for his body?' They said no; they were afraid the Indians would kill them; they didn't know what became of him; they didn't go back and hunt for his body." Mrs. Moore testified further that she heard nothing more about Pinkney afterwards.

Mrs. Elizabeth A. Adair, testified that she knew Solomon Sublette, and that in 1857 Solomon told her that he and his little son were the only two Sublettes left.

The deposition of Isaac M. Yardell, was taken by the plaintiffs, but not being read by them, it was read by the defendant. Yardell testified that in 1845 he left Cooper county, Missouri, for the west, with four other persons, of whom Pinkney W. Sublette was one; and that Pinkney was then about seventeen years old; that he and Pinkney traveled or were together from 1845 until 1865, when Pinkney died in his presence; that Pinkney was about thirty or thirty-five years old when he died.

The defendant introduced in evidence a receipt signed by Isabelle Sublette, his mother, and witnessed by Pinkney, in 1821, for certain property belonging to the estate of her husband, Philip.

Upon these facts the defendants claim that Pinkney died before Frances, to-wit, before May 16, 1861, and

that the Pinkney whom the plaintiffs' witnesses refer to was not the Pinkney who was the brother of Solomon and the uncle of Frances, but was the Pinkney who went west with Yardell in 1845.   For, say the defendants, if Pinkney was old enough to witness a receipt in 1821, it is impossible that he could have been only seventeen years old in 1845 when he went west with Yardell, and likewise impossible that he could have been only thirty or thirty-five years old when he died in 1865, and, therefore, they say the Pinkney who died in 1865 and was buried near Fontenelle, and whose grave was marked with the stone herein described, and whose skeleton was exhumed in 1897, was not the Pinkney who was the uncle of Frances, who went west with his brother William in 1828 or 1829, and who was reported by William and Andrew to have been killed by the Indians, and who was never heard of afterwards by any of his family, but must have been the Pinkney, lad of seventeen, who went west from Cooper county in 1845, with Yardell and party.

Thus it is apparent that there was substantial evidence on both sides in this case, before the trial court, and enough to sustain a finding of fact for either party. If the trial court had found for the plaintiffs on this state of the evidence, it could not have been said that there was no substantial evidence to support the finding.   And the same is equally true as to a finding for the defendant.   Under the practice that obtains in this court the findings of facts, in a case at law, by a jury or by a trial court, sitting as a jury, are not disturbed if there is any substantial evidence to support them, and judgments are not reversed upon the facts of the case except where they are so manifestly and flagrantly wrong as to shock the judicial sense of right.   No such wrong is present in this case.

The testimony of the surviving relatives of Pinkney and of persons who have no interest in this case, as to statements made by members of the family, concerning his birth and his death, although hearsay, was admissible.   [Dawson v. Mayall, 45 Minn. 408; Cope's

Adm. v. Pearce, 7 Gill 247; Cuddy v. Brown, 78 Ill. 415.] In fact, Mrs. Moore who testified to these family matters, was plaintiffs' witness, and her testimony in this regard was elicited by the plaintiffs themselves. And the testimony of Shaw to these matters was admitted without any objection by the plaintiffs and the strongest part of it was brought out on cross-examination by the plaintiffs.

The trial court, therefore, had before it testimony sufficient for it to base a finding that there were two entirely different Pinkney Sublettes; that the Pinkney who was the uncle of Frances lived in St. Charles county, and went west in 1829, and was killed by the Indians prior to 1842, and that his family never heard of him afterwards; the other Pinkney lived in Cooper county, and went west with Yardell in 1845 and died in 1865. The court believed the family version, and found that the Pinkney under whom the plaintiffs claim, died prior to 1861, and therefore he could not have inherited from his niece Frances, who did not die until May 16, 1861. This finding concludes the matter in this court.

The judgment of the circuit court is therefore affirmed. All concur.