LAMM, J.
— Plaintiffs sue in the circuit court of tbe city of St. Louis in 1906. Defendants are tbe Hydraulic Press Brick Company, a, corporation, and 474 other corporations and individuals. The object of the suit is to try the title and determine the interests of plaintiffs and defendants respectively in and to 306 acres of land west of King’s Highway in the city of St. Louis. [See Sec. 650, R. S. 1899; now Sec. 2535, R. S. 1909.]
Defendants answered separately. Plaintiffs replied and thereafter defendants moved for judgment on the pleadings. That motion was sustained on the 10th day of February, 1910', and (from a final judgment then rendered) plaintiffs appealed.
In October, 1910, one hundred and fifty of the defendants filed their motion in Banc-to advance the cause. The showing made thereby was .(among other things) that some of the corporate defendants were using the tracts claimed by them severally for business purposes; that some portion of the land was unimproved ; but that for the most part the land was claimed and occupied by individual defendants, who resided thereon in their homes; that from 1600' to 2000 people resided there, who were either defendants or members of their families; further, in substance, that the ■ claim of defendants was an ancient and stale one, viz., the same held in judgment by this court in Peniston v. Schlude, 171 Mo. 132 (wherein dramatic features appealing to the student of early annals are exploited); that the law question raised by the motion for judgment on the pleadings was settled in Chaput v. Bock, 224 Mo. 73; that plaintiffs’ old and shadowy claim was being held in terrorem for the purpose of tribute and speculation over the heads of the residents of St. Louis claiming lots and parcels of land within the *705 described tract, -thereby casting a clond on their titles and preventing alienation and renewals of mortgages ; that delay fostered and fed the evil; and that the number of persons interested made the case' fall within that class where public and general interest was involved. Taking that view of it, we sustained the motion to advance and set the cause down for hearing in Division One at its April Term, 1911.
The question is: Was the motion for judgment on the pleadings well ruled?
That question seeks the pleadings, the substance of which follows:
The petition describes the land as a single tract by metes and bounds, courses and distances referring to old landmarks and monuments in St. Louis. Enough appears from the petition to show indirectly that the survey and description of the land relates to the boundaries of an old farm now a part of the city and laid out into streets, alleys, lots and blocks. It takes seven solid printed pages to list the names of the formidable aggregation of churches, schools, companies, trustees and other individual defendants, and the suit is self-evidently brought against the entire home-owning population in that part of the city. The petition charges that plaintiffs own the land in feé simple and that defendants “ claim some title, interest or estate adverse to the estate of the plaintiffs therein.”
The case runs, here, on the theory that the separate answer of Amos R. Taylor (mutatis mutandis) will do as a sample of all the others. Attending to his, it denied the allegations of the petition and then sets up title, ownership and possession in himself to lot 4, block 9, of F'airmount subdivision, a part of the locus in quo. It avers that he claims no title to, interest in, or possession of any other land described in the petition and disclaims any; that he has no claim or interest in common with any defendant or with any other person whatsoever in said land, and claims *706 said lot 4 against all persons. Averring that this action, as to him, is. severable and that his defense is distinct from that of his codefendants, he demands a separate trial as to the issues between plaintiffs and him. He also pleads as defenses the ten-year and the thirty-year Statute of Limitations.
Each of the other answers raised the same issues.
To each of the answers a reply came in the same as to Taylor’s, which latter was to the effect that the land had been subdivided into many lots and blocks, hut that such subdivision was without authority, knowledge or consent of plaintiffs. The reply admits that no one of the defendants claimed an interest in all of the property described, in the petition, admits that Mr. Taylor, makes claim only to the particular property described in his answer, and admits that he makes no claim to the remainder of the'property described in the petition or to any of the described property claimed by any of the other defendants. The reply, after a .general denial, goes on to aver that there was a common source of title, to-wit, Solomon P. Sublette, and that defendant claims record title from one Esther Prances Sublette; that at the death of Solomon the land was a farm of 306 acres, and that Taylor and those under whom he claims, having entered under claim of title from Esther, divided the same into city lots and blocks without the authority or knowledge of plaintiffs and in defiance and disregard of their rights.
With pleadings in this fix, defendants,‘as said, filed a motion for judgment — the grounds thereof being that in each of the answers each defendant sets forth that he owns in severality and not jointly, one with the other, the separate piece or pieces of land described in the separate answers; that no defendant claims any title or interest in the entire tract described in the petition, nor any individual interest therein, nor any interest in any other part of said tract except that portion which in each answer is set out as being the property *707 in severality “of the respective defendant;” that said allegations in each of the answers are admitted to he true by the reply filed in the cause; and that there is a misjoinder , of parties defendant, and a misjoinder of causes of action.
The motion was well ruled, because:
(a). Chaput v. Bock, 224 Mo. 73, was in Banc, was unanimously ruled, is in point and dispositive of this appeal, unless overruled, or distinguished in vital matter. Counsel for plaintiffs argues that the Chaput Case should be distinguished from the one at bar on principle; further, in effect, as near as we can put it, that the Chaput Case was unsoundly decided. The aggregation of counsel for the aggregation of defendants argue contra. Those phases of the matter will be presently considered.
Attending to the Chaput Case, the following propositions were there ruled, viz.:
(1) . The broad and general language of section 650, Bevised Statutes, 1899’ (now Sec. 2535, B. S. 1909. as amended), giving the right to institute an action to quiet title “against any person or persons having or claiming to have any title, estate or interest in such property” and authorizing the court to define and adjudge “by its judgment or decree the title, estate or interest of the parties, severally, in and to such real property,” must be read and construed in connection with the next section (651, now 2536) directing, in effect that the proceedings shall conform in all respects to the provisions of the Code of Civil Procedure. In other words, we must go to such Code for the rules regulating the joinder of parties and causes of action, or to the rules of equity.
(2) . Next (and herein of the concrete case), in a suit instituted under the old section 650' to quiet title to a tract of land, 7800’ by 385 feet, in the city of St. Louis, brought against 498 defendants, in which each defendant filed a separate answer of the same character and *708 raising the same issues as the answers in the present case — that is, each o described a lot and claimed to own it in severalty as against plaintiffs and his codefendants and disclaimed any interest in the lots claimed by his codefendants or any other portion of the original survey, and in which plaintiffs filed a reply denying new matter excepting from the denial the averments in the answers that each of the defendants claimed to he the owner in fee of the separate lot or parcel of land described in his answer, and where at the trial plaintiffs admitted that each defendant claimed in severalty the particular lot occupied by him and made no claim to any other part of the tract, defendants were entitled to judgment upon the pleadings and admissions and that plaintiffs’ suit was well dismissed for multifariousness. •
(3) . Next, that under section 602, Revised Statutes 1899 (now Sec. 1804, R. S. 1909), if the petition showed on its face a misjoinder of causes of action or of parties, it was demurrable. But where such defects did not appear upon the face of the petition (as in the Chaput and the instant case) the objection may he taken by answer.
(4) . Next, that “while this court has been disposed to give a broad construction to section 650', it has not countenanced a -defiance of all the rules of good pleading in its endeavor to uphold the statute. ’ ’
We grounded our rulings in the Chaput Case on the doctrines of Gardner v. Robertson, 208 Mo. 605; Ferguson v. Paschall, 11 Mo. 267; Sutton v. Casseleggi, 77 Mo. 397; Mullen v. Hewitt, 103 Mo. 639 ; Illinois Steel Co. v. Schroeder, 133 Wis. 561; and Hale v. Allinson, 188 U. S. 56; and upon those provisions of our Code, which (under circumstances present in the Chaput Case and in this) would necessitate several hundred trials (Sec. 694, R. S. 1899; now Sec. 1971, R. S. 1909), and would require the judgment upon each separate verdict to await the trial of all the other issues as to each of *709 the other defendants in order that thereby bnt one final judgment may be rendered as required by said section. (See also Sec. 2097.)
It was further pointed out, inter alia, that if a court permitted such joinder of parties and causes of action, then a defendant, unsuccessful in his trial, could not take an appeal until the other 497 cases were tried —a condition characterized as “so unjust that no court should tolerate it. ”
A case under former section 650 is at law or in equity according to circumstances. Its language points that way. Thus, it deals with “legal or equitable” interests, titles and estates'. Its words' are appropriate to both law and equity, it directs a “judgment” or “decree.” .The exposition of that statute was not without great difficulty, and has been guarded and cautious. It must be admitted we are not a little inclined to look upon it as in the nature of an equitable proceeding to be tried to a court without a jury or instructions. [Hudson v. Wright, 204 Mo. l. c. 423; Stone v. Perkins, 217 Mo. l. c. 601-2; Hutchinson v. Patterson, 226 Mo. l. c. 182-3; Chilton v. Metcalf et al., 234 Mo. 27.]
However, the foregoing view of it does not tell the whole story, but is subject to exceptions. Thus, in Lee v. Conran, 213 Mo. 404, Division One of this court held that where title rested on the fact of accretions and there were no equities relied on by either side, the defendant was entitled to a trial by jury and it was error to refuse one.
In Frowein v. Poage, 231 Mo. 82, it was held by Division Two, following the Lee Case, that in a case of accretions where there were no equities pleaded “nor did the evidence tend to show a right in equity on either side, ’ ’ the suit was a plain contest at law and triable by a jury on demand of defendant.
What was the principle underlying both" of those cases? It was this: Our Constitution provides that “the right of trial by jury, as heretofore enjoyed, shall *710 remain inviolate.” Therefore, all issues triable by a jury piior to tbe adoption of tbe Constitution of 1875 are still so triable. [Berry v. Railroad, 223 Mo. 358.] That principle clearly covers suits under old section 650 in all cases where tbe title binges alone on facts bringing tbe case within either tbe ten or thirty-year Statute of Limitations, and no equities are pleaded (as here); so that tbe evolution of tbe matter, shown by tbe present state of tbe ease-learning, amounts to this: A. court may not babe an equitable loaf in a legal pan, or a legal loaf in an equitable pan. Tbe question of practice under that section remains open to be determined by the pleadings and facts of each individual case.
Under tbe pleadings, this case was a -plain action at law, triable to a jury. Therefore, tbe statutory right of severance and 475 separate jury trials and verdicts, all to precede tbe final judgment as to any one litigant, brings tbe case directly within the delays, chaos, burdens, inconveniences and other mischief struck at in tbe Cbaput Case.
It is allowable to reason from similars to similars. The maxims are: Concerning similars the. judgment is tbe same. Nothing in law is more intolerable than to rule a similar case by a diverse law. It is obvious, therefore, as heretofore said, that tbe Cbaput case must control tbe disposition of tbe instant case unless its doctrine is to be exploded or tbe case itself is distinguishable.
(b). While we announce satisfaction with tbe Cbaput case, yet out of respect to counsel for plaintiffs, we may further consider one phase of bis argument. He lays marked stress on tbe rule permitting a suit in equity for tbe very purpose of avoiding a multiplicity of suits. As we grasp it, tbe force of bis argument is that if bis petition be held multifarious, that bolding shuts tbe door on tbe right of bis clients to go into equity to avoid such multiplicity. But we take tbe true *711 rule to "be tliat a party, appealing to equity to avoid a multiplicity of suits, must still obey tbe rules of good pleading and steer clear of tbe vice of multifariousness. The reason that equity takes cognizance in order to avoid a multiplicity of suits is tbe common sense of it, viz., convenience. Now, convenience within tbe purview of tbe rule, faces three ways — one face turns toward plaintiffs, one toward defendants, and another toward tbe court charged with tbe duty of administering justice, not pell-mell or by chance-medley, but in orderly fashion by rule and good sense. Both parties litigant must be considered. If any preference is given to either, on mere convenience, it should be to defendants, since plaintiffs go into court voluntarily, defendants (speaking in fireside figure) are pulled in by tbe ears.
Speaking further to the question of inconvenience, here there-is no abatement óf tbe number of suits. Tbe joinder merely speaks a word of promise to the ear, to break it straightway or later. Tbe right to a severance and a separate trial, existing, as it does, in favor of each defendant, results in tbe same number of trials there would have been bad 475 suits been instituted, with tbe added inconvenience to defendants of delays arising from tbe right of a multitude of counsel to impress themselves on tbe incidents of that case, as their versatility prompts or tbe law allows. Had plaintiffs instituted 475 suits, each against a separate defendant, tbe Code would not have permitted their consolidation on motion. [Sec. 1963, R. S. 1909.] It is not contended that the right to joinder in this case arises from tbe code provisions relating to parties [Sec. 1732-3-4, E. S. 1909, quod vide~\ ; so that if plaintiffs be permitted sua sponte and by one stroke of their pen in their petition to consolidate them or join tbe defendants contrary to tbe spirit of tbe above sections and contrary to tbe spirit of tbe equitable doctrine which permits the avoidance of a multiplicity of suits when, and only when, *712 there is such community of interest in a common decisive question or subject-matter as permits a court of justice in the course of orderly procedure to settle the whole controversy in one blanket proceeding and one blanket judgment, it would be in the exercise of a power not given by written law and not bottomed on reason.
The Chaput Case, while directly riding off on a question of mnltifarionsness, did not neglect to consider the equitable doctrine of avoiding a multiplicity of suits pressed upon us in this case. To the contrary, that question was involved there, and the authorities cited in that case dealt with that matter as did the case itself.
Counsel for defendants cite us to additional authorities strongly fortifying the Chaput Case, viz., Buchanan County v. Adkins, 175 Fed. 692; Slossen v. McNulty et al., 125 Ala. 124; Tompkins v. Craig, 93 Fed. 885; Lehigh Valley Railroad v. McFarlan, 30 N. J. Eq. 135 ; Webb v. Parks, 110 Ga. 639; Portwood v. Huntress, 113 Ga. l. c. 819; Scott v. McFarland, 70 Fed. 280; O’Brien v. Fitzgerald, 39 N. Y. Supp. 1. c. 709; 1 Pomeroy’s Equity (3 Ed.), sec. 251-½. The guiding principle announced in those eases and authorities is that there must be such common relation, common interest or common question involved that one proceeding’ in equity may really avail to prevent a multiplicity of suits and permit a general bill of peace. Where that principle does not obtain there is no real avoidance of a multiplicity of suits and, the reason of the rule failing, the rule cannot be invoked.
In the case at bar a multiplicity of suits is avoided only in name and at the start not in reality and at the end. Here each defendant stands on his own title under the statutes of limitations. There is no common interest, or common relationship, or common question anent the subject-matter, decisive of the controversy. When- a jury decides for or against one defendant, the title of-another is not affected a whit, but remains quite *713 open, depending on the facts of his individual case— that is, each tub stands on its own bottom; and we can see no reason why these plaintiffs should be allowed to tie a whole population into a composite and blanket lawsuit, when no sensible benefit arises from it, except an avoidance to plaintiffs of the manual labor, of bringing a separate suit for each tract against the claimant of that tract, and the further relief to them of being eased of the burden of the preliminary costs of instituting so many actions.
The cases cited by counsel for plaintiffs from our own Reports (of which Tucker v. Tucker, 29 Mo. 350', is an example) when carefully analyzed and discriminatingly applied to the concrete facts in judgment do not run counter to Chaput v. Bock.
(c). But, it is argued, the instant case differs in material facts from the Chaput Case and, therefore, should not be ruled by it. We see no material difference in vital features.
(1) . True the reply filed in the instant case differs from that filed in the Chaput Case in that it set up a common source of title, viz., Solomon P. Sublette, while in the Chaput Case there was no common source of title. But that fact does not differentiate one case from the other on principle. A common source of title agreed to or shown to exist merely marks that link in the chain of title at which the trial of title between adverse claimants may begin, and if on the motion for judgment on the pleadings it be assumed there was a common source of title, viz., Solomon Sublette, yet the issues raised by the pleadings relating to the Statute of Limitations remain precisely the same in both cases. The issues entitle' defendants to a severance and make necessary 475 trials, thereby making the reasoning of the Chaput Case conclusive in the case at bar, unless something else distinguishes the case.
(2) . Counsel argues there is something else, and that something else is said to be that defendants are *714 estopped from insisting- in this case that there is no common question decisive of the whole controversy and which brings the case within the equity rule of avoiding multiplicity of suits. As herebefore pointed out, after judgment below and an appeal taken an,d pending here, 150 of the defendants united in a motion to advance, and in that motion not only stated the grounds heretofore referred to, but alleged the further fact that plaintiffs claim through Pinckney W. Sublette and defendants through Esther Frances Sublette; that in the ejectment suit of Peniston v. Schlude, 171 Mo. 132, the sole question of fact at issue was whether Pinckney, survived Frances; and that in the present case' the sole question of fact is whether Pinckney survived Frances. That averment in the motion, it is argued, is conclusive on defendants and shows there is one common question in which all of the plaintiffs and defendants are interested, the decision of which decides the controversy and which brings the case within the rationale of the rule permitting joinder in equity to avoid multiplicity of suits.
But learned counsel by inadvertence argues unsoundly in that behalf. For that:
In the first place, the motion contains other averments as grounds to advance and directly invoking our discretion in the premises. Certainly, we did not advance the case because of the last mentioned allegation. We advanced it on the ground hereinbefore set forth, namely, because a matter of public interest was involved.
Again, the real question is whether the motion for judgment on the pleadings was properly ruled, not whether the motion to advance was properly ruled. The latter motion has served its day and office. Its averments are dead matter so far as the merits on the hearing of this appeal are concerned. The case stands for disposition as if that motion had never been made. *715 Its averments, made after the appeal was taken, cannot be allowed to affect respondents right to an affirmance which right began with the appeal and ran with it to the end in unimpaired vigor.
In the next place, 325 of the defendants did not join in that motion and certainly cannot be precluded by what the other 150 said in their motion.
The motion for judgment on the pleadings raised questions of law, viz., whether on the admissions of the pleadings (made directly or by necessary inference) the petition was multifarious; whether there was a conglomeration of independent lawsuits; or a case involving a bill of peace against many defendants, all of whom had a common interest in the subject-matter of the suit under the equitable rule for avoiding a multiplicity of suits. Those questions, as we said at the outset and say again, were well decided below.
The judgment is affirmed. .
All concur.