GEORGE S. WOLFERSBERGER v. GLENNA HOPPENJON, CHARLES H. RECHNER and EMMA L. RECHNER, Appellants.—68 S. W. (2d) 814.

Division Two, February 23, 1934.

*Henry S. Conrad, L. E. Durham* and *Hale Houts* for appellants.

818

*J. M. Johnson, C. W. Prince, James N. Beery* and *Walter A. Raymond* for respondent.

FITZSIMMONS, C.—Respondent (plaintiff) brought suit against appellants (defendants) in the Jackson County Circuit Court to determine the title to certain real estate in Kansas City, alleging that appellants claimed some title thereto. Respondent also sought $22-000 actual damages and $25,000 punitive damages for the wrongful detention of possession of the premises. Upon trial before a jury there was a verdict and judgment in favor of respondent and against all appellants for title and possession of the property and for $15.000 actual damages. From this judgment the three defendants, Glenna Hoppenjon, Charles H. Rechner and Emma L. Rechner, wife of Charles H., appeal to this court. The property involved is described by street numbers as 2757-2759 and 2761-2763 East Twenty-seventh Street, Kansas City, Missouri. The improvements consist of two six-apartment buildings. It is the same property which was the subject matter of another and wholly different controversy presented in the case of Wolfersberger v. Miller, 327 Mo. 1150, 39 S. W. (2d) 758, decided by the Supreme Court, Division Two, March 25, 1931. The plaintiff there is the same person as here, but no defendant in that suit is a party to this action.

I. Appellants' first assignment of error is directed at the order of the trial court in overruling their motion to transfer the cause to the equity docket, the motion alleging that upon the pleadings the cause was cognizable in a court of equity only. An examination of this assignment requires a summary of the pleadings. In his amended petition respondent alleged that he was the owner (of the equitable title) in fee simple of the property in controversy; that appellants asserted some title to the real estate based upon two deeds and a contemporaneous contract of settlement signed by respondent and wife on February 5, 1924; that the signatures of respondent and his wife to the deeds and the contract of settlement were fraudulently obtained by appellants, one of whom (Charles Rechner) was falsely asserting ownership in due course of two certain promissory notes of $1725, each executed by respondent and wife to one George M. Hansen in January, 1923, which notes were alleged to be void for fraud. The particulars of this general allegation were then given, the substance of them being as follows:

. In January, 1923, respondent Wolfersberger was the owner of equities of the two apartment buildings at 2757-2759 and 2761-2763 East Twenty-seventh Street, Kansas City, Missouri, which equities

he had acquired in a trade a few months before. George M. Hansen had acted as his agent in the trade and in January, 1923, was still representing respondent. Hansen pretended and falsely represented to respondent that the latter was indebted to Hansen in the sum of $3,450 for commissions and other items apparently chargeable to respondent in the trade and in the operation of the two apartment buildings after the trade. Hansen further falsely represented to respondent, the petition charged, that the apartment buildings were netting and would continue to net $1,750 per year in excess of all payments on encumbrances and operating charges. Respondent, relying upon these representations, and "in satisfaction of said fictitious indebtedness" excuted, at the time mentioned, January, 1923, two promissory notes for the sum of $1,725 each, payable to the order of Hansen one year after date, with interest at six per cent payable semi-annually, and respondent also executed two deeds of trust, one on each apartment building, to secure the payment of the respective notes. The petition further charges that, at the request of Hansen and in reliance upon his false representations and pretenses, respondent also and as part of the same transaction, assigned to Hansen all of the net rentals of the properties over and above the necessary operating expenses, taxes, and interest and principal payments on first and second deeds of trust, and Hansen agreed in another contemporaneous writing, to endorse monthly the net rentals on one of said notes until that note was satisfied, and that the notes were to be paid and satisfied only out of the net proceeds derived from rents, unless plaintiff chose to otherwise discharge them; and that upon the payment and discharge of one of the notes, the other note would be extended another year from its maturity, so as to enable the plaintiff to pay and discharge both of said notes out of the net proceeds of the properties, "which agreement it was the purpose of said Hansen to violate, knowing the impossibility of satisfying said notes except by the sacrifice of the properties aforesaid," etc.

The petition further charges that in February, 1923, Hansen assumed the agency of the apartments and, up to and including October, 1923, he collected all rents and made all disbursements but failed to credit any net rentals on either of the notes for $1,725 each; that in the fall of 1923, at the suggestion of one Frank E. Stiles, Hansen voluntarily relinquished the agency of the apartments to the Stiles Realty Company or to Frank E. Stiles, subject however to the continued right of Hansen to have the net rentals applied on the notes; that, without the knowledge of respondent, Hansen, for the purpose of wrongfully collecting the notes, endorsed them in blank and delivered them to Stiles for appellant, Charles H. Rechner, the latter "having agreed to take said notes and enforce payment thereof, provided his name, his interest and his participation in the scheme was not disclosed;" that in the transfer of the notes to Rechner, Stiles

acted secretly and without the knowledge of respondent and in behalf of appellant Rechner, although Stiles and his realty company at the time were respondent's agents in the management of the apartment property. The petition further charges: "That at the time of said transfer, defendants herein or their agents, were aware of the conditions and facts under which said notes were executed by plaintiff, and of the actual income on said properties, and it is the belief of plaintiff and he charges the fact to be that said transfer occurred after said notes were in default, considering them apart from the contemporaneous agreement aforesaid."

The petition proceeded to allege that about January 15, 1924, a few days after the "pretended maturity" of the notes appellants began publication of notices of sale at public vendue on February 7, 1924, of the apartment properties in foreclosure of the deeds of trust given to secure the payment of the notes; that on February 5, 1924, "for the purpose of fraudulently wresting from plaintiff the ownership of said apartment properties and also of depriving plaintiff of his potential right of redemption allowed him by law in the event of foreclosure under the deeds of trust aforesaid," appellants falsely represented to respondent that one G. M. Hoppenjon was the owner of the two notes for $1,725 each; that appellant Rechner was Hoppenjon's agent for the collection of the notes who acquired the notes for a valuable consideration before anything was due on them and who knew nothing of the facts surrounding their execution and that Hoppenjon had instructed appellant Rechner to proceed with the foreclosure sale on February 7, 1924, unless before that time the notes were paid or a compromise agreement was made. The petition further alleges that appellants drafted a contract of settlement to the effect that, if respondent would execute and deliver to Hoppenjon a warranty deed to each apartment building the foreclosure proceedings would be abandoned, the two notes for $1,725 each and the deeds of trust securing them would be released and satisfied of record, and there would be delivered to respondent an option deed of purchase obligating Hoppenjon to convey the apartments back to respondent provided the latter, on or before June 1, 1924, tendered to Hoppenjon $3,885.37. The petition further charges that the option deed also was drafted, but that neither it nor the contract of settlement was signed by Hoppenjon at the time, it being falsely represented that, owing to prevailing weather conditions, Hoppenjon's signature could not be obtained but would be available within a few days. In these circumstances respondent and his wife signed the contract of settlement and the warranty deeds and deposited them with Stiles, the agent of respondent under a mutual agreement of the parties to this action that Stiles was not to deliver these instruments until Hoppenjon had executed and delivered the option deeds.

Additional recitals are: Stiles fraudulently and without authority of respondent, delivered to one or the other of appellants the warranty deeds, which then were recorded, although the option deed at no time was delivered to respondent; that appellants canceled the notes and released the deeds of trust and mailed these instruments to respondent; that respondent tendered them back, but the tender was refused; that G. M. Hoppenjon in fact was Glenna Hoppenjon (one of the appellants here) a stenographer in appellant Rechner's office; that she did not have any interest in the notes; that her name was used to deceive and defraud respondent; that the latter would not have executed the warranty deeds had he known the concealed facts, and that he deposited the deeds with Stiles in reliance upon the latter's agency and upon his adherence to the conditions of delivery. By reason of the allegations of the petition, respondent charged that "the notes and deeds aforesaid under and by virtue of which appellant Charles H. Rechner asserts title to the property herein are utterly void and of no effect." The petition also charged: "That because of the foregoing, plaintiff's title to the aforesaid real property has been fraudulently, willfully and maliciously *clouded and blurred*, necessitating this proceeding to quiet his said title, and plaintiff has also been deprived of the possession and income of the aforesaid real property since February 5, 1924, except one of the apartments therein of which he retained possession until his forcible removal therefrom January 23, 1925, all to his loss in the sum of $22,000." Respondent prayed "the court to ascertain and determine the estate, right, title and interest of the plaintiff and defendants herein, and by its judgment define and adjudge the estate, right, title and interest of the plaintiff and the defendants in and to said property," and for actual and punitive damages.

Appellants, Glenna Hoppenjon, Charles H. Rechner and Emma L. Rechner, by their answer to the amended petition, denied that respondent was the owner of the equitable title in fee simple or of any right, title or interest in the property in suit; admitted that appellants claimed some estate, right, title and interest in the property, and that appellant Glenna Hoppenjon claimed the legal and record title of the property, for the benefit however of appellant Charles H. Rechner. The answer further admitted the execution by respondent and his wife of the warranty deeds mentioned in the amended petition; averred that these deeds were duly delivered and that they conveyed the property to Glenna Hoppenjon for the benefit of appellant Rechner; admitted that the two promissoy notes, mentioned in the petition, were executed by respondent and wife and delivered to George M. Hansen; averred that Rechner became the owner of the notes for value, in due course and without notice; admitted the execution and delivery of the written agreement dated

February 5, 1924, between respondent and wife and appellant Glenna Hoppenjon, and denied all other allegations of the petition.

As a further defense, the answer set up that on June 28, 1924, respondent Wolfersberger and wife were tenants in possession of one of the apartments in the premises in suit, under appellant Glenna Hoppenjon as holder of the legal and record title; that respondent was in default in his rent; that Glenna Hoppenjon began a proceeding against Wolfersberger and wife for rent and possession of the apartment before John H. Pollock, a Justice of the Peace of Kaw Township, Jackson County, Missouri, in which township the property was located; that service of process was duly had on the Wolfersbergers; that the action was once continued by agreement of the parties; that on July 9, 1924, the justice duly rendered judgment in favor of Glenna Hoppenjon and against Wolfersberger and wife for possession and restitution of the apartment occupied by them; that a transcript of the proceedings before the justice was duly recorded in the office of the Clerk of the Circuit Court of Jackson County and a writ of execution was issued to the sheriff; that Wolfersberger was dispossessed under this writ; that no appeal was taken and that the judgment is final; that at no stage of the proceedings before the justice of the peace did Wolfersberger by any pleading verified by affidavit put in issue the title to the real estate mentioned in his amended petition, by reason of all of which respondent was estopped from claiming title, legal or equitable, to the land in suit, and was precluded from maintaining his action and that the judgment of the justice was *res adjudicata* of respondent's rights. The answer prayed for a dismissal of respondent's petition and for costs. The reply alleged that the "so-called judgment" of the justice of the peace in the landlord and tenant action was void and of no effect for six reasons each of which denied the jurisdiction of the justice.

■ Under the pleadings as thus summarized should the trial court have sustained appellant's motion to transfer the cause to the equity side? It is a common-place statement that whether a proceeding under the statute to quiet title (Sec. 1520, R. S. 1929, Mo. Stat. Ann.), is an action at law or a suit in equity is to be determined by the issues raised by the pleadings. The statute itself points that way, as this court said in Peniston v. Hydraulic Press Brick Co., 234 Mo. 698, 138 S. W. 532. The rights given by the statute go to any person claiming any title, estate or interest in real property whether the same be "legal or equitable." It is the duty of the trial court to enter "its judgment or decree," and it "may award full and complete relief whether legal or equitable." In the case of Lee v. Conran, 213 Mo. 404, 111 S. W. 1151, this court for the first time passed directly on the question whether or not the parties to a statutory action to quiet title are entitled to a jury.

The governing rule was declared to be that: "If the issues joined entitle the parties to an ordinary judgment at law, then, under the

Constitution and the laws of the State, the parties are entitled to a trial by a jury; but if the issues tendered are equitable in their nature and call for equitable relief, then the cause is triable before the chancellor.'' In that case the sole question of fact was whether the land in dispute accreted to the shore land which plaintiff owned or to an island in the Mississippi River which defendant owned. This court accordingly reversed and remanded the cause for the error of the court in overruling defendant's application for a trial by jury. In the case of Minor v. Burton, 228 Mo. 558, 128 S. W. 964, this court ruled that a statutory cause of action to quiet title, stated in the first count, was at law because plaintiff relied on a paper title and defendant pleaded adverse possession beyond the period of the Statute of Limitations. A like ruling for the same reason was made in the case of Peniston v. Hydraulic Press Brick Co., supra. But in the latter case the court in its opinion admitted that it was inclined to look upon the statute to quiet title as in the nature of an equitable proceeding to be tried to a court without jury or instructions. In support of this expression of tendency, the court (138 S. W. l. c. 535) cited four cases which we here again mention.

In Hudson v. Wright, 204 Mo. 412, 103 S. W. 8, it was held that the statute to quiet title did not oust the ancient jurisdiction of courts of equity to remove clouds from title, to declare resulting trusts and to vest out of one person and into another the title to land. In Stone v. Perkins, 217 Mo. 586, 117 S. W. 717, which was a statutory proceeding to quiet title, Stoddard County was the common source of title, and the issue was whether plaintiffs or defendants had the superior title. In this connection this court said (117 S. W. l. c. 720): ''It has been uniformly ruled that the trial of title under Section 650 (Sec. 1520, R. S. 1929) is for the court and not for a jury.'' In Hutchinson v. Patterson, 226 Mo. 174, 126 S. W. 403, an action in ejectment to which the defense was a decree in a former suit to quiet title, this court said that present Section 1520, Revised Statutes 1929, is in the same spirit as the ancient chancery bill to quiet title. It only enlarges the scope of that bill. The court in the Hutchinson case also said that, while an action under this section is a statutory proceeding and therefore strictly speaking cannot be called a suit in equity, yet the nature of the proceeding is such that it often involves matters that a court of equity alone is qualified to consider, to examine titles and to determine questions of law that affect their validity—just the character of judicial work that led to the establishment in English jurisprudence of courts of chancery.

In Chilton v. Metcalf, 234 Mo. 27, 136 S. W. 701, in which plaintiff appealed from an adverse judgment in his suit to quiet title, this court declined to consider plaintiff's objection that the trial court refused to give certain instructions. The reason for this refusal is

thus stated (136 S. W. I. c. 704): "We put this assignment away from us, because this is not a lawsuit in which instructions filled a recognized office. In its nature it is an equitable proceeding. At bottom it seeks to set aside the deeds under which Metcalf holds and to remove a cloud on plaintiff's title—a matter of equity cognizance. Its life is, first, to determine title, and, second, quiet title, and to bar and preclude defendants from setting up any further claim. In the last aspect it was a bill of peace, also, invoking equitable principles."

In our opinion, respondent in the instant case by his petition and reply, sought to do precisely what the plaintiff in the Chilton case attempted, namely to set aside deeds and to remove a cloud on respondent's title—"a matter of equitable cognizance." In fact, respondent in his petition alleged that appellants by their acts "clouded and blurred" his title and made necessary the proceedings to quiet his title. In Cuthbert v. Holmes (Mo.), 14 S. W. (2d) 444, this court ruled that, as the pleadings prayed for the cancellation of a deed and the removal of a cloud from plaintiff's title, it was a suit in equity. It is true that, in the instant case, respondent does not in terms ask for the cancellation of any instrument or for the removal of a title cloud. In his petition he treats as nullities the two deeds of trust, the settlement agreement, and the two warranty deeds under which appellants claim, and in his reply he declares void a judgment of a justice of the peace, pleaded in the answer. But the substance rather than the forms of the pleadings must control the question whether a proceeding is an action at law or a suit in equity. [State ex rel. Wyandotte Lodge, etc., v. Evans, Judge, etc., 176 Mo. 310, 75 S. W. 914.] In the last cited case issues equitable in their nature were held to have changed a statutory foreclosure action at law into an equitable foreclosure suit.

It is not in point to say of this proceeding that it is not equitable in its nature because appellants in their answer did not set up equitable defenses and did not ask for affirmative relief. In many actions to quiet title plaintiffs merely declare in terms of the statute. They are specific only in naming the parties and in describing the land involved. These are actions at law unless defendants by their answer set up equitable defenses and ask affirmative relief, in which event the proceeding becomes a suit in equity. [Koehler v. Rowland, 275 Mo. 573, 205 S. W. 217, 9 A. L. R. 107; Jacobs v. Waldron, 317 Mo. 1133, 298 S. W. 773.] But in the instant case respondent did not limit his petition to the language of the statute. He went further and alleged the execution, delivery and recording of two deeds of trust, the initiation of foreclosure proceedings under these deeds, the stoppage of foreclosure by a settlement agreement, the execution, alleged unauthorized delivery and the recording of two warranty deeds given in accordance with the agree-

ment, and the release of the deeds of trust and the cancellation of the notes thereby secured, also under the terms of the agreement. He alleged the complete nullity of these instruments and proceedings and prayed for the quieting of the title in him free from the legal effect of any of them. Appellants, by their answer, set up as a defense the validity of all the instruments mentioned. The equities therefore were pleaded in the petition and the legal defenses (except the equitable plea of estoppel) in the answer. In these circumstances, we inquire (as did this court in Hauser v. Murray, 256 Mo. 58, 165 S. W. 376) whether the general rule that a prayer for affirmative equitable relief by answer is necessary to convert an action at law into a suit in equity, is applicable in a case of this character? It is not.

What we have said forecasts our conclusion that the trial court erred in treating this proceeding as wholly an action at law. But the scope of our view that the suit is equitable in its nature is limited to the grounds alleged by respondent to quiet title in him. Insofar as respondent seeks damages actual and punitive because he was deprived of possession of the premises, the proceeding is an action at law. Respondent joins in one count the relief which he seeks both in equity and in law. The practice in these cases is to invoke in the first count the benefit of the statute to quiet title, and to sue, in a second count, for damages for trespass or for wrongful deprivation of possession. Minor v. Burton, 228 Mo. 558, 128 S. W. 964, is an example of the recommended practice.

II. In view of our decision that this is a suit in equity upon the issues involving title, it is not necessary for us to rule upon other assignments of error arising upon the record made subsequent to the overruling of the motion to transfer. But we deem it fit to notice briefly some of these assignments for the guidance of the chancellor upon a retrial. George M. Hansen is not a party to this suit. Whatever may have been the effect, legal or equitable, of the wrongful acts of Hansen in an action between him and respondent, Wolfersberger, there was no substantial evidence, direct or circumstantial, to connect appellants with the fraudulent schemes of Hansen and to deprive them of their rights as innocent holders, for value before maturity, of the notes secured by the two deeds of trust upon the apartments in suit. There was missing from the evidence the link of fraudulent connectivity which, in the case of Buchanan v. Rechner, 333 Mo. 634, 62 S. W. (2d) 1071, was held to bind the same Rechner who is appellant here to the wrongful acts of Buckingham, his codefendant in that case.

III. Respondent urges that, at the time, that appellant Rechner purchased the two promissory notes for $1,725 each, secured by third deeds of trust, the interest was past due and unpaid and

the notes themselves bore the mark of dishonor in the absence of indorsements of payment of interest. Therefore, respondent argues, Rechner cannot be classed as a *bona fide* purchaser for value. The notes were dated January 2, 1923. By their terms Wolfersberger and wife promised to G. M. Hansen or order one year after date the sum of $1,725. The clause of the notes relating to interest is as follows: "For value received, with interest thereon at six per cent per annum from date until paid, interest payable semi-annually; and if interest be not paid when due, same is to become part of the principal and the total sum to bear . . . per cent interest." Rechner bought the notes more than six months but less than one year after date. We are of opinion that the cases cited by respondent, most of which deal with bonds bearing past due and unpaid interest coupons are not in point here. The notes involved here could not have been collected by suit or foreclosure of the deeds of trust securing them before one year after date for failure to pay the first semi-annual interest. [Wilson v. Reed, 270 Mo. 400, 193 S. W. 819; Frye v. Shepherd, 173 Mo. App. 200, 158 S. W. 717; Koehring v. Muemminghoff, 61 Mo. 403, 21 Am. Rep. 402.]

■ IV. We do not believe that upon a second trial the court below should permit a money judgment against appellant, Emma L. Rechner to stand, in the absence (as in the first trial) of any evidence whatever of her connection with the frauds charged. In a trial of the issues involving title she is a necessary and proper party in view of the admissions of the answer that Glenna Hoppenjon holds title for the use and benefit of Rechner and wife, "and that the defendant Charles H. Rechner is the owner of the entire beneficial interest in said property subject only to the marital rights of the defendant Emma L. Rechner to-wit: the inchoate dower of the said Emma L. Rechner."

V. For the reason that the trial court committed prejudicial error in refusing to transfer the cause to the equity docket, the judgment is reversed and the cause is remanded. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All the judges concur.