JOHN HANDLEY *et al.*, Appellants, v. CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, Respondent.

| 55 | 499 |
|----|-----|
| 83 | 588 |

St. Louis Court of Appeals, December 19, 1893.

1. **Pleading**: DENIAL OF CONTRACT IN WRITING: MANNER OF INVOKING STATUTORY RULE. The statutory rule, that the defendant admits the execution of a contract in writing, upon which the action is founded, by failing to deny it under oath when he is charged therewith, cannot be invoked for the first time in this court; to be available it must be urged in the trial court as ground of objection to the introduction of evidence controverting the execution of the contract.

2. **Common Carriers**: SUFFICIENCY OF EVIDENCE. The evidence in this cause is considered, and it is *held* sufficient to show authority upon the part of a local agent of a common carrier to make a contract for the through shipment of stock beyond the carrier's line. The evidence is also *held* insufficient to conclusively establish an abrogation of that contract by the delivery of the stock by the carrier to the shipper at the terminus of the carrier's line.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

. REVERSED AND REMANDED.

*Henry B. Davis* for appellant.

(1) The evidence that the local agents at McPherson were in the habit of issuing similar bills of lading and that they were recognized and carried out by the respondent is sufficient evidence of the authority of the local agent in this case. *White v. Railroad*, 19 Mo. App. 400; *Turner v. Railroad*, 20 Mo. App. 632; *Brooks v. Jameson*, 56 Mo. 505; *Sommerville v. Railroad*, 62 Mo. 399. The receiving carrier is liable for losses occurring beyond the terminus of its line when it has made a contract to transport the goods beyond such terminus. *Orr v. Railroad*, 21 Mo. App. 333; *Craycroft v. Railroad*, 18 Mo. App. 487.

*M. A. Low* and *W. F. Evans* for respondent.

Mr. G. W. Ecker, who signed the contract of shipment at McPherson as the agent of respondent, was merely the local agent at that point, and had no authority to execute the contract in question for the shipment of stock to a point not on the respondent's railway, and had no authority to undertake, on behalf of the respondent, the transportation of freight beyond its own line. *Grover, etc. Co. v. Railroad*, 70 Mo. 672; *Orr v. Railroad*, 21 Mo. App. 333; *Turner v. Railroad*, 20 Mo. App. 632. (2) The undisputed evidence shows that the stock in question was transported from Kansas City to St. Louis by the Missouri Pacific Railway Company in pursuance of the contract made by appellant, J. H. Handley, with that company at Kansas. City, and that the injuries to the stock were received

while on the line of that company and in its possession. The respondent should not be held to answer for the negligence of the Missouri Pacific Railway Company.

BOND, J.—This is an action brought for breach of a contract for the shipment of stock from McPherson, Kansas, to St. Louis, Missouri.

The contract sued on was executed by one of the plaintiffs, Handley, and also by the defendant railroad company by its agent, G. W. Ecker, and provided for the transportation of one car load of horses, subject to certain provisions inserted therein, from the town of McPherson, Kansas, to the City of St. Louis, Missouri. Under the terms of said agreement free transportation was accorded to one person for the purpose of accompanying the stock, and giving attention and protection to them while in transit.

The answer of the defendant was: *First*, a general denial; *secondly*, an averment that it was a common carrier between McPherson, Kansas, and Kansas City, Missouri, at which latter point its line terminated; that it delivered thereat the car load of horses and mules to the plaintiff, John Handley, in a good and and sound condition; that said plaintiff, Handley, after the delivery to him of the stock at Kansas City, as aforesaid, made a contract for their transportation with the Missouri Pacific Railway Company from Kansas City to St. Louis, Missouri, under and by which they were carried between those two points, with which contract the defendant has no connection, and whereto it was neither directly nor indirectly a party; *thirdly*, a denial that it ever entered into a contract for the shipment of the carload of horses from McPherson, Kansas, to St. Louis Missouri, a denial that it was a common carrier between those points or between Kansas City and St. Louis, Missouri.

The evidence showed that about the twenty-first day of June, 1890, a written contract was executed between plaintiff Handley and the defendant, whose signature was attached by its agent, G. W. Ecker, which contract obligated the plaintiff to ship, and the said defendant to haul, a car load of horses and mules from McPherson, Kansas, to St. Louis, Missouri, under other limitations and restrictions as to care, attention, liability, etc., set forth in said contract.

The evidence tended to show that in pursuance of this contract, plaintiff, after some delay, secured a "street stable car," number 825, which he loaded with his stock and for which he paid $7.30, extra price, which extra amount was presented in the bill for the freight which he paid at St. Louis.

The evidence tended to show that, after the arrival of this car containing the stock of the plaintiff at Kansas City, they were taken therefrom for the purpose of being fed; that thereafter in the evening, when plaintiff Handley had started his horses to the "chutes" to be loaded for St. Louis, he was met by an agent of the Missouri Pacific road who told him that the car, in which his stock had come to Kansas City, had been taken away, and that there was no car there to put his stock in; that thereupon said Handley demanded a street stable car, so that he could separate his stock and secure their safety; that he was told that he would then be left at Kansas City; that he replied that he "was three days late now getting to St. Louis; that will put me off again; a big feed bill, and I don't know anything to do;" that thereupon the Missouri Pacific agent went off, and after a while an engine was sent with an old car ankle deep in mud and manure, which had been lying on the side tracks, for the reception of plaintiff's horses; that he objected to the use of this car; that the men around the car carried about two

buckets full of sand into it, drove the plaintiff's horses into the car, and pulled the car up into the yard; that the plaintiff then walked up into the yard and met the yardmaster, and complained of the injustice that was being done him; that, soon after the train had started on its journey to St. Louis, plaintiff's horses were thrown down in the mud, tangled up, and several of them injured; and that, when they arrived at St. Louis, several of them were down and many of them in a badly damaged condition.

The evidence tended to show that, after plaintiff's horses had been placed upon the cars of the Missouri Pacific railway at Kansas City, he signed a contract handed to him by the agents of that corporation, covering their transportation to St. Louis and covering free transportation for himself; and that under that contract the shipment came from Kansas City to St. Louis, where it was delivered in a badly damaged condition.

The evidence tended to show that plaintiff had been shipping eight or ten years; that he had shipped some twenty-five or thirty loads of horses over the road to St. Louis; that it was proper to take such shipments out of the cars at Kansas City and feed and water them, and then take the evening train for St. Louis; that this would enable the shipment to reach St. Louis on the same time as if, when it got to Kansas City, it had not been unloaded but put on a local train and forwarded to St. Louis.

The evidence tended to show that the special street stable car, hired by plaintiff at McPherson, Kansas, was placed in the possession of the Missouri Pacific road by the defendant railroad when it arrived at Kansas City; that, when the stock arrived at St. Louis, they were damaged to the extent sued for.

The evidence was that the defendant railroad owned no line between Kansas City, Missouri, and St. Louis, Missouri, and that G. W. Ecker, who signed its name to the stock shipment contract sued on, was its local agent at McPherson, Kansas, where he did their business and solicited stock, and was in control of the agency at that point, which was a place of considerable shipment, averaging five loads of stock a day; that the general offices of the defendant railroad are at Topeka, Kansas.

The evidence tended to show that the particular shipping contract sued on was the first one that Mr. Ecker, on behalf of the defendant railroad company, had ever executed with the plaintiff Handley, although he had signed and executed a number of such contracts since that time, and although the plaintiff had, under contracts of a similar form, signed by agents who preceded Mr. Ecker, made shipments to St. Louis of other loads of stock for the last three or four years. The total freight charges, including the rent of the street stable car and amounting to some $70, were paid at St. Louis to the agent of the Missouri Pacific Railway Company.

At the close of the case the defendant prayed the court to give an instruction in the nature of a demurrer to the evidence, which instruction, being held under advisement, was given on November 19, 1892, and final judgment rendered in favor of the defendant. Plaintiff duly excepted to this ruling of the court, and, after the overruling of his motion for a new trial, took an appeal to this court.

The one question arising on this appeal is whether or not, under the pleadings and evidence or the legitimate inferences arising therefrom, the plaintiff was entitled to have the issues herein submitted to a jury.

The petition in this case being founded on a written instrument charged to have been *executed* by the defendant, and there being no answer denying its execution verified by affidavit, the law is that its execution should have been adjudged confessed. Revised Statutes, 1889, sec. 2186; *Rothschild v. Frensdorf*, 21 Mo. App. 321; *Smith, etc., Co. v. Rembaugh* 21 Mo. App. 390.

It has, however, been held by this court that to avail himself of this statutory rule, the party alleging the written contract must object to the testimony tending to impeach its execution in the trial court, on the ground that the answer or other pleading denying its execution is not verified by affidavit. It was further held that such objection could not be interposed for the first time in an appellate court. *Beck & Pauli Lithograph Co. v. Obert*, 54 Mo. App. 240.

There was evidence to the effect that the plaintiff had made a number of contracts for through shipment to St. Louis with the local agent at McPherson. While the evidence is not quite clear that any of such contracts were made before the contract in controversy, we are not prepared to say that the evidence had no tendency to show that fact.

We must, therefore, hold that the issue as to the authority of the local agent to make the contract in question should have been submitted to the jury.

The only question remaining is whether or not the contract, made by plaintiff with the Missouri Pacific Railway Company at Kansas City for the shipment of his stock thence to St. Louis, operated as an abrogation of the contract entered into by him with defendant at McPherson for their shipment from that point to St. Louis.

Under the facts and circumstances in evidence in this case, there are but two views which can be taken

of the conduct of defendant in delivering the shipment made by plaintiff at Kansas City.

*First*, that defendant thereby delivered the stock to plaintiff, declining on its part to transport it any further.

*Second*, that defendant delivered the shipment in question to the Missouri Pacific Railway Company, in order to fulfill its through contract with plaintiff by means of a connecting carrier. In other words, when the stock shipment in question reached Kansas City, defendant then committed a breach of its contract, or continued the performance of its contract by a connecting carrier.

Whichever of these two views may be taken, we think, under the record, the case should have been submitted to a jury.

If the act of the defendant in stopping the special street stable car, numbered 825, which was designated in its contract of shipment at Kansas City, amounted to a breach of that contract, then the plaintiff is not precluded from recovering the natural and proximate damages occasioned to him by such breach, because he *thereafter* entered into another contract with another carrier for the transportation of his stock to the point of their original destination.

On the other hand, if the act of defendant in putting the special car containing plaintiff's shipment in the possession of a connecting carrier at Kansas City, was for the fulfillment of its contract for through shipment, then it is equally plain, under the facts in this record, that this case was one for the jury. For we do not think that the reception by the plaintiff of the contract tendered to him by the Missouri Pacific road, *after his stock had been received by, and was in the possession of, that company*, was, as a matter of law, an abandonment by the plaintiff of his rights under the prior

contract. His strenuous objections to the deprivation of the special stable car secured to him, and his protest against the car in which his stock were placed by the Missouri Pacific road, and other circumstances, all indicate that the contract between himself and the Missouri Pacific road was mainly to afford himself free transportation as the attendant of his stock, or, at any rate, that it was signed by him with no intention whatever of thereby releasing the defendant from its obligations to him for through transportation of his stock on the special street stable car which they had stipulated to "haul," and for which an extra charge was exacted; and the question of that intention ought to have been submitted to the jury.

Even if the contract in suit had provided for transshipment to St. Louis without stipulating for a special car, the defendant would still be liable for the negligence of the carrier who performed that portion of the transportation, provided for in defendant's contract, between Kansas City and St. Louis, unless there was a new and substituted agreement superseding the original contract. Our conclusion is that this case ought to have been submitted to the triers of the fact under appropriate instructions. For the error of the trial court in sustaining a demurrer to all the evidence, its judgment is reversed and the cause remanded. All concur.