GRAHAM et al. v. STAFFORD et al., Appellants.

Division One, February 18, 1903.

1. **Dower**: QUARANTINE RIGHT: ALIENABLE. The widow's quarantine, or her right to tarry in the mansion house of her husband and to the possession of the plantation thereto belonging, is alienable, and. when assigned, the assignee takes all the incidents of the right belonging to her prior to the transfer, among which is the right to the use and possession of the land until dower has been assigned, or during her life if not assigned. (Distinguishing Quick v. Rufe, 164 Mo. 408.)

2. ———: ———: ———: EJECTMENT: LIMITATIONS. The assignee in a deed from the widow and her subsequent husband after the first husband's death, takes a right to possession during her life of the mansion house and the plantation thereto belonging, or until dower is assigned, and after her death the heirs of the first husband, who at the time of his death was the owner, can, if no assignment of dower was made during her life, recover in ejectment all the land which her grantees had continuously had in possession. And until her death, if there has been continuous possession by the assignee and his heirs since the assignment, the statute of limitations. did not begin to run in their favor or against the heirs of the deceased husband.

3. ———: ———: LACHES: ABANDONMENT. The fact that the remaindermen, after the widow's sale and transfer of her quarantine in their deceased father's lands, did nothing during her life to indicate any assertion of ownership, does not support a charge of laches, nor is it sufficient ground upon which to predicate an assumption of abandonment, even though that period was fifty years.

Appeal from Daviess Circuit Court.—*Hon. Gallatin. Craig*, Special Judge.

AFFIRMED.

*Hicklin, Leopord & Hicklin* with *H. K. Allen* for appellants.

Rebecca Graham, widow of Wm. M. Graham, appellants' ancestor, by joining in the deed of date February 4, 1848, and returning to Virginia, abandoned and destroyed her right of quarantine, and plaintiffs are barred from a recovery by the lapse of time. Quick v. Rufe, 164 Mo. 408.

*W. D. Hamilton* and *Boyd Dudley* for respondents.

(1) No defense of abandonment of quarantine by widow is pleaded, and this question was not legitimately before the trial court for determination. (2) There were no declarations of law asked, given or refused, and the finding of the lower court is incontrovertible here. Easley v. Elliott, 43 Mo. 289; Wilson v. Railroad, 46 Mo. 36; Weilandy v. Lemuel, 47 Mo. 322; Hamilton v. Boggess, 63 Mo. 233; Henry v. Bell, 75 Mo. 198; Harrington v. Minor, 80 Mo. 270; Gaines v. Fendoer, 82 Mo. 497; Cunningham v. Snow, 82 Mo. 587; Seifer v. St. Louis, 141 Mo. 595; Sutter v. Rader, 149 Mo. 308; Bozarth v. Lincoln Legion of Honor, 67 S. W. 679; Rogers v. Hopper, 68 S. W. 239; Hubbard v. Fuchs, 164 Mo. 426; Smith v. Royce, 165 Mo. 654. This case is ejectment—answer general denial. It is purely an action at law, and the appellate court is not called upon to determine the weight of the evidence. The finding of the trial court is final upon that question. Smith v. Royce, 165 Mo. 658; Sutter v. Rader, 149 Mo. 307. (3) There was no abandonment of quarantine right and it is alienable. (a) The statement in the affidavit to the effect that early in the spring of 1846, Rebecca A. Graham, who was the widow of William M. Graham, deceased, removed with her children from the cabin to the house of James J. Graham, who lived near said land and continued to live at his home until

she married John M. Miller and removed to Virginia in 1848, was evidently made by defendant, not because it was true, but to secure continuance. Did the deed from Rebecca Graham and her second husband in 1848, and her subsequent deed of correction operate as an abandonment of her quarantine right? We say not, if there is any binding force and effect in the decisions of the supreme tribunal of this State, repeatedly reaffirming a doctrine that was first announced clearly and unequivocally seventy years ago, and that has stood unquestioned for three-quarters of a century. (b) The quarantine right is alienable. Stokes v. McAllister, 2 Mo. 163; Jones v. Manley, 58 Mo. 559; Brown v. Moore, 74 Mo. 633; Gentry v. Gentry, 122 Mo. 216; Carey v. West, 139 Mo. 177; Fischer v. Siekmann, 125 Mo. 165; Westmeyer v. Gallenkamp, 154 Mo. 28; Kane v. McKown, 55 Mo. 181; Melton v. Fitch, 125 Mo. 281; Sherwood v. Baker, 105 Mo. 472; Osborn v. Weldon, 146 Mo. 192. (c) The widow's quarantine is a clear statutory right and can only be terminated by assignment of dower. Melton v. Talley, 48 Mo. 504; Roberts v. Nelson, 86 Mo. 21; Null v. Howell, 111 Mo. 277; Carey v. West, 139 Mo. 176; Waller v. Mandus, 29 Mo. 25. (d) And when assigned or alienated, it carries with it all the incidents belonging to it prior to its transfer. Fischer v. Siekmann, 125 Mo. 165; Brown v. Moore, supra; Jones v. Manley, supra. (e) The statute of limitations will not run as against the widow or her grantee in possession under quarantine right until assignment of dower or death of widow. Westmeyer v. Siekmann, 154 Mo. 28 and cases cited by Judge Brace in the decision as follows: Jones v. Manley, 58 Mo. 559; Brown v. Moore, 74 Mo. 633; Roberts v. Nelson, 86 Mo. 21; Holmes v. King, 93 Mo. 452; Hickman v. Link, 97 Mo. 482; Sherwood v. Baker, 105 Mo. 472; Null v. Howell, 111 Mo. 273; Thomas v. Black, 113 Mo. 66; Fischer v. Siekmann, 125 Mo. 166; Carey v. West, 139 Mo. 146; Kieth v. Kieth, 80 Mo. 125; Salmon v. Davis, 29 Mo. 176; Osborn v. Weldon, 146 Mo. 192. (f) The deed of Rebecca Graham conveyed whatever

right she had in the land. This is fundamental—in this case the right conveyed was her quarantine. 2 Devlin on Deeds, sec. 849; Bakewell v. McKee, 101 Mo. 331.

ROBINSON, J.—Suit in ejectment for eleven and two-third acres of land, described by metes and bounds in the north part of the northeast quarter of the southeast quarter of section 24, township 67, of range 29, in Daviess county, against defendants in possession. The petition is in the usual form alleging ouster as of August 29, 1898. The answer is a general denial. There was judgment for plaintiffs, and the case is brought here on defendants' appeal.

The plaintiffs, a son and grandchildren of William M. Graham, deceased, claim the whole of said southeast quarter aforesaid, and began their suits in ejectment against other persons found in possession of the remainder of said quarter section at the same time this action was begun, and those suits are to await and abide the result of the judgment herein.

The evidence at the trial disclosed this state of facts:

William M. Graham, deceased, the father of one of these plaintiffs, and the grandfather of the others, entered said southeast quarter of section 24, township 61, of range 29, in the year 1843, and took immediate possession thereof, inclosed a few acres, built a small house thereon, and occupied the house and premises as a home for himself and family until the time of his death, which occurred in September, 1845. The widow with the children continued to live upon the land, and in the latter part of the year of 1847, she was married to one John M. Miller, and he with his wife, and her children by her first husband, further continued to live upon the land in controversy, as their only home, until February, 1848, when Mrs. Miller sold her interest therein to her brother-in-law, James J. Graham, who by himself and those claiming under him, have ever since been in the exclusive possession and enjoyment of the

land up to the trial of this action. When James J. Graham bought Mrs. Miller's interest in the land in 1848, she and her then husband, John M. Miller, joined in a deed with covenants of general warranty, intending to convey the wife's interest in the land in controversy to said grantee, but by an oversight the particular quarter of the section named was omitted from the description. This defect not being discovered until years afterwards, in October, 1867, Mrs. Miller and her husband made another deed to said James J. Graham, to correct said defect, in which deed the land was properly described. After selling her interest in the land in controversy in 1848, Mrs. Miller, with her then husband, moved to Virginia, and there the family continued to live until the death of Mrs. Miller in 1898. It was also shown that no assignment of dower in the land to the widow was ever made. These are the substantial facts of the case.

There was, however, some testimony by way of the declarations of one Meadows appearing in an application for a continuance by defendants, to the effect that the widow, Rebecca Graham, with her children, moved from the household in which the husband, William M. Graham, had died, shortly after that occurrence, to the home of her brother-in-law, the grantee in the deed of February 4, 1848, and lived with him until her marriage to John M. Miller, and their subsequent departure for Virginia. This fact, however, if it could be said to have any significance, was found by the trial court against defendants, very properly we think, and so we have stated the fact to be that the widow remained upon the homestead until she sold her interest therein to James J. Graham, through whom defendants' only claim of title to the land is made.

As we understand appellants' position on this appeal, it is, to use the language of their brief, "that Rebecca Graham, widow of William M. Graham, respondents' ancestor, by joining in the deed of date February 4, 1848, and returning to Virginia, abandoned and destroyed her right of quarantine, and that plaintiffs are

barred from recovery herein by lapse of time," and second, "that quarantine is a mere personal privilege to be exercised in favor of the widow, but is not the subject of grant." If appellants are correct in either of their contentions it is manifest that the judgment in favor of these plaintiffs is clearly wrong, as this action was not begun for more than fifty years after defendants' grantor went into possession of this land, and from that time to the present he and his grantees have held the uninterrupted possession and enjoyment thereof.

However much we might be disposed to recognize the logic of appellants' analysis of our quarantine act, and the force of their argument made in support thereof, to the effect that quarantine is a mere personal privilege to be enjoyed by the widow pending the assignment of her dower in the lands of her deceased husband, and not a right therein which she may assign to be enjoyed by another, if the question was before us now for its first determination, the matter has been so long settled to the contrary in this State, and the decisions have been so repeated and unvarying, and so many property rights have been acquired on the strength thereof, that nothing but confusion and evil would result from its adoption at this time.

This court in an opinion as far back as the second Missouri Report, under a statute practically the same as the law of 1845, in force at the time the widow's right of quarantine attached in this case, held, that quarantine or "the right to tarry in the mansion house of her husband and the plantation thereto belonging" was alienable, and in numerous cases since, as the question has come up in one way and another, this court has repeatedly declared and announced the same rule, except in the one case referred to by appellants, that will presently be noticed. [Stokes v. McAllister, 2 Mo. 163; Jones v. Manly, 58 Mo. 559; Brown v. Moore, 74 Mo. 633; Gentry v. Gentry, 122 Mo. 216; Carey v. West, 139 Mo. 177; Fischer v. Siekmann, 125 Mo. 165; Osborn v. Weldon, 146 Mo. 192; Kane v. McKown, 55 Mo. 181; Westmeyer v. Gallenkamp, 154 Mo. 28.]

While we do not undertake to say that this court has gone to the extent of holding that quarantine is classed and defined as a definite estate in lands, in the technical sense of that term, beginning with the case of Jones v. Manly, 58 Mo. 564, and followed in an unbroken line of authorities to Carey v. West, 139 Mo. 146, it has been uniformly held that the right of quarantine is not only alienable (or "assignable," as the term is generally employed), but that when assigned, there goes with it all the incidents of the right belonging to the widow prior to the transfer, which is, the right to the use and possession of the land until the widow's dower has been assigned, or during her life, at the pleasure of the remainderman.

Whatever inconsistency there may be said to have existed in the rules of construction placed by the court upon the statute defining dower and quarantine, and the right of the widow under each, that there did exist a rule of construction restricting the disposition of the former right (except to release it), while at the same time it permitted the alienation of the latter, is most clear and certain. But as we are concerned now only with the ascertainment of what was the rule as to the right of the widow to dispose of her quarantine, and not its reconciliation with other rules affecting the right of disposition, or want of disposition of her dower, we need only say at this time, that the inequality in rights, if inequality it should be characterized, has been corrected by the legislative act of 1889, now section 2934, Revised Statutes 1899, giving to the widow the right "to transfer and assign her unassigned dower interest in the real estate of which her deceased husband died seized in law or equity" as she has ever held by rule of court the right to dispose of her quarantine.

In answer to the contention of appellant, that the case of Quick v. Rufe, 164 Mo. 408, declares the rule to be, "that quarantine is a right personal to the widow and is inalienable," we have only this to say, that while the above language in quotation is found in the opinion, the question of quarantine, or the widow's right there-

under, was not for consideration in that case, as the further following language of the opinion clearly shows: "Properly considered, however, there is nothing in this record to support the contention that there were any quarantine rights complicating the case." The declaration that quarantine "is a right personal to the widow and is inalienable" in that case, is rather in the nature of a dictum than an authoritative announcement of a definite rule asserted by the writer thereof. As said, however, a rule to the contrary in this State has been too long announced and acted upon to be set aside at this late day without the court is driven thereto by the most obvious reason of necessity, which does not appear to us at this time.

As the land in suit was a part of the plantation belonging to the mansion house of William M. Graham, deceased, and was included in the deed of February 4, 1848, and the one made in correction thereof in 1867, by Rebecca A. Miller, and her then husband, to James J. Graham, and as those deeds operated to convey all and whatever right the widow had in or to the land (in this case her quarantine) to said James J. Graham, and as said land has been in the possession of said James J. Graham and those claiming through him at all times since 1848 up to the death of Rebecca Miller in 1898, and as during all that time there had been no assignment of dower to the widow (Rebecca Miller), nothing has occurred to put in operation the statute of limitations invoked in favor of the defendants and against the plaintiffs, until the occurrence of the death of the widow, Rebecca Miller, in 1898, and that is short of the statutory period that will bar a recovery.

The fact that for more than fifty years after the death of plaintiffs' ancestor, they have done nothing to indicate an assertion upon their part of ownership in or right to the land in controversy, is no evidence upon which to base the charge of laches, or to predicate an assumption that they had abandoned all claim of right to the land.

Though plaintiffs might at any period during that

entire time have terminated the right of James J. Graham, or those claiming through him, to the exclusive possession of the land in controversy as assignee of the widow's quarantine, by having her dower assigned, they were not compelled to so act, and their inaction, resulting as it has to the exclusive benefit of said James J. Graham, and those claiming through him, can not be construed as an act of abandonment by plaintiffs of their claim of right to the land, or that defendants' holding of the same was in any sense hostile to plaintiffs' claim of right, and that too without regard to whether plaintiffs' inaction in the matter was the result of a generous consideration for the right of their mother's grantee, who they might have thought paid substantially all the land was worth, or whether it was the result of carelessness or of absolute ignorance on their part, that they had or were entitled to any interest in the property, contingent or otherwise.

The law will presume that defendants knew the limit of their rights under the deed through which they claimed, and since plaintiffs have done nothing by word or action (or for that matter by their inaction) that has induced defendants or those from whom they got the land to change their attitude thereto on the strength of plaintiffs' conduct, or that would operate to bar plaintiffs' assertion of their claim of right to the land at this time, the defendants must stand where the title of record of the land places them, in the position of a life tenant in possession after the death of the person upon whom his life's estate, or life right of possession to the land was depending.

The judgment of the trial court was for the right party and is affirmed.   All concur.