JOHN M. RAINS v. THOMAS MOULDER, MAY BELLE BARDIS, LINCOLN MOULDER, JOHN DEWEY MOULDER, ROSCOE MOULDER, MARY CABLE, JOE DAVID MOULDER; FAY MOULDER, RETA MOULDER, and W. F. WILKINSON, Guardian *Ad Litem* for MAXINE MOULDER, Appellants.—90 S. W. (2d) 81.

Division Two, January 4, 1936.

*A. L. Shortridge, W. F. Wilkinson* and *W. Raleigh Gough* for appellants.

278

*Barney Reed, Henry P. Lay* and *E. W. Jones* for respondent.

BOHLING, C.—Suit to determine and quiet title to approximately 650 acres of real estate (hereinafter at times, for convenience, designated the "Rains" land) in Camden County.

The petition, in conventional form, was filed February 12, 1931. Answer and cross-petition was filed October 20, 1931, on behalf of the adult defendants, in which the minor defendants, Reta Moulder and Maxine Moulder, through their guardian *ad litem*, joined.

The answer and cross-petition sets up title in the defendants. It alleges, in substance, that the common source of title was George J. Moulder, owner in fee, who died intestate March 23, 1922; that said George J. Moulder occupied said land as his homestead at the time of his death; that Emma Moulder, widow of said George J. Moulder and defendants Thomas Moulder, Lincoln Moulder, Mary Belle Bardis, John Dewey Moulder (who had attained their majority at the time of the death of said George J. Moulder), Roscoe Moulder, Mary Cable, Joe David Moulder, Fay Moulder, Reta Moulder and Maxine Moulder (then minors), all children of said George J. Moulder, survived said George J. Moulder as his sole heirs at law; that the administrator of the estate of said George J. Moulder at an attempted administrator's sale, under orders of the Probate Court of Camden County, Missouri, had in connection with a petition for the payment of demands allowed against said estate (not, however, chargeable against said homestead), executed a deed conveying said land to the purchaser [Emma Moulder] at said sale; that said purchaser thereafter conveyed said land to plaintiff; that said administrator's sale was null and void because of noncompliance with jurisdictional statutory requirements and because the lands attempted to be sold included the homestead, which had never been set apart, of said George J. Moulder; that the Union Electric Light & Power Company, a corporation, had condemned an easement over approximately 108 acres of said land in the District Court of the United States in an action against all litigants involved in this action to quiet title, and that the award [$17,500] is in the registry of the United States District Court

for the Western District of Missouri awaiting order of distribution. The prayer, among other relief, asked the court to define and adjudge the estates, rights, titles, and interests of all the parties, plaintiff and defendants, severally, in and to said lands, and that the title to said lands be forever quieted in defendants, subject to the easement aforesaid.

Plaintiff's reply admits the allegations concerning the condemnation proceedings, the common source of title in said George J. Moulder, the allegations as to the widow and heirs at law of said George J. Moulder, and alleges, in substance, according to the statement in defendant's brief, "that plaintiff's grantee, Emma Moulder (who was the widow of said George J. Moulder), had purchased in good faith at the administrator's sale and that the purchase price paid by her had been applied to the payment of debts allowed against the estate of said George J. Moulder; that plaintiff obtained a warranty deed from said Emma Moulder, and, under an honest belief that he acquired good title, went into possession of the lands and made valuable improvements thereon and paid taxes and interest and principal upon the loan thereon;" that said debts, so paid, were liens against said lands superior to the claims of said defendants; that plaintiff purchased said land, made said improvements, and paid said interest and principal with the knowledge of said answering defendants; and prays, in substance, among other things, that the court adjudge and decree plaintiff to be the owner in fee of said land, and defendants to be estopped from and to have been guilty of such laches in asserting their purported claims as now bars them from asserting said claims, and for such other and equitable relief as the court may find plaintiff entitled to.

The proof tended to establish the allegations in defendants' answer and cross-petition and plaintiff's reply, and no contention exists as to material facts. George J. Moulder died intestate, occupying the tract here involved as his homestead. Defendants are all of his children. N. V. Moulder was administrator of his estate. The personal estate being insufficient, the administrator petitioned the probate court, to sell the "Rains" land and also 240 acres of other land of said estate (hereinafter referred to as the "Mauss" land) to pay the allowed demands. Proceeding under said petition the "Rains" land was appraised at $3,844.90, exclusive of a first mortgage of $2,500 and the widow's dower of $1,155.10; and the "Mauss" land was appraised at $1,537.96, exclusive of the widow's dower valued at $462.04—a total appraised value of $5,382.86. Thereafter, said administrator attempted to sell all of said real estate to Emma Moulder, exclusive of said dower interest and said mortgage on the "Rains" land for the sum of $5,382.86—its appraised value—and, the sale being approved, the administrator, on April 10, 1923, executed his ad-

ministrator's deed purporting to convey all the interest of said George J. Moulder in the "Rains" land and the "Mauss" land to Emma Moulder. The chancellor found, and the facts established (not questioned by either party) that said attempted administrator's sale was void; because of the attempted sale of the homestead of said George J. Moulder for the payment of debts not legally charged against such homestead during his lifetime, and because the proceedings by which said probate court attempted to acquire jurisdiction to order or approve said sale were not had or conducted in accordance with the statutes.

Emma Moulder procured the funds to effect her purchase from the Camden County State Bank, a banking institution, and secured said loan, which was for $5,500, by her mortgage on all of said lands, subject to the first mortgage of $2,500. On September 6, 1923, she conveyed the "Rains" land by warranty deed, purporting to convey the fee simple title, to the plaintiff herein in consideration of the sum of $9,000 which plaintiff paid by taking title subject to the aforesaid $2,500 mortgage by paying and satisfying the aforesaid $5,500 mortgage, and by paying the balance of said purchase price in cash to Emma Moulder. About a year later Emma Moulder sold the 240 acre tract to Mr. Mauss.

The statement in defendant's brief recites that "plaintiff thereupon went into possession of said land and continued to occupy the same until the trial of this action and later. Plaintiff occupied said lands under an honest belief of title and erected the improvements thereon. . . ."

After hearing the evidence, the trial court appointed commissioners to set off and admeasure dower and homestead. The commissioner's report was filed and approved by the court; 80 acres, described in said report, was set off as a homestead, and approximately 72 acres, described in said report, was assigned as the dower estate of Emma Moulder, passing to plaintiff under her deed.

The court decreed the defendants the owners of the fee simple title to the lands in controversy; subject, however, to the homestead estate of the two minor children and the aforesaid dower estate, the balance due on the aforesaid $2,500 mortgage, and an equitable lien in plaintiff in the sum of $373.80 for principal paid on said $2,500 mortgage and in the sum of $8,282.86 for the amount to which plaintiff was held entitled to subrogation by reason of the payment of the debts and demands against the estate of George J. Moulder, deceased, composed of $5,382.86 principal sum actually used and expended by the administrator of said estate to pay the debts and demands against the same, and $2,900 interest thereon from April 10, 1923, at the rate of six per cent per annum, and also the sum of $4,000 for improvements made by plaintiff on said lands, which said sums, aggregating

the total sum of $12,656.64, were decreed a lien against all the right, title, interest and estate of defendants in and to said lands, except said homestead, and subject to said dower.

Defendants' appeal attacks (1) the assignment and admeasuring of the dower estate; (2) the allowance for improvements; and (3) the allowance of $5,382.86, and interest, as a charge against defendants' title.

Defendants contend the action is at law. An action to quiet title is at law or in equity according to the issues presented by the pleadings [Lee v. Conran, 213 Mo. 404, 411(1), 111 S. W. 1151, 1153(1); Ebbs v. Neff, 325 Mo. 1182, 1191(1), 30 S. W. (2d) 616, 620(3), citing cases]. The court may not go outside the evidence and the pleadings and make findings and grant relief not responsive to any issue in the case [Friedel v. Bailey, 329 Mo. 22, 37, 44 S. W. (2d) 9, 15 (13, 14); Hecker v. Bleish, 319 Mo. 149, 175(9), 3 S. W. (2d) 1008, 1019(18)]. A prayer for affirmative equitable relief, absent allegations of fact authorizing it [Peterson v. Larson, 285 Mo. 119, 125(1), 225 S. W. 704, 705(2)], or the interposition of an equitable defense, absent a prayer for affirmative equitable relief [Citizens Trust Co. v. Going, 288 Mo. 505, 511(1), 232 S. W. 996, 998(1); Koehler v. Rowland, 275 Mo. 573, 581(1), 205 S. W. 217, 218(1)] is insufficient to invoke the jurisdiction of a court of equity.

The effect of defendant's answer, is to seek, first, a determination of the estates, rights, titles and interests of plaintiff and defendants, severally, and second, the quieting of that title in defendants; i. e., the removal of the cloud of the allegedly void administrator's deed and the deed of plaintiff's grantee from defendants' title—a matter of equitable cognizance [Chilton v. Metcalf, 234 Mo. 37, 50(4), 136 S. W. 701, 704(2); Wolfersberger v. Hoppenjon, 334 Mo. 817, 827(3), 68 S. W. (2d) 814, 818(3)], involving extrinsic evidence [Shanklin v. Boyce, 275 Mo. 5, 16(3), 204 S. W. 187, 188(2)].

Defendant contends, in connection with this issue as well as other issues going to the establishment of equitable rights for improvements, etc., in plaintiff by the judgment and decree, that, even if well pleaded, equitable rights may not be first presented in the reply; citing Daniel v. Pryor (Mo.), 227 S. W. 102, 105(6) (an action for personal injuries, to the effect that, upon a plea of contributory negligence by defendant, a plaintiff may not first present the humanitarian doctrine in his reply, as the nature of the action must be determined from the allegations in the petition); and Stock v. Schloman, 226 Mo. App. 234, 240, 42 S. W. (2d) 61, 64(8). The instant case is not governed by the ruling in Daniel v. Pryor, supra, a law action under the code.

When first enacted Section 1520, Revised Statutes 1929 (Mo. Stat. Ann., p. 1682), embodied only the first sentence, and authorized per-

sons claiming an interest, legal or equitable, in real property to institute an action to ascertain, define and adjudge the interests of any person having or claiming an interest therein [See Laws 1897, p. 74, sec. 1]. Section 1521, Revised Statutes 1929 (Mo. Stat. Ann., p. 1698), providing for the application of the "code of civil procedure" to proceedings to quiet title, was Section 2 of said act (Laws 1897, p. 74). Thereafter [Laws 1909, p. 343], the second sentence of said Section 1520, under an emergency clause, was added. It reads: "And upon the trial of such cause, if same be asked for in the pleadings of either party, *the court* may hear and finally determine any and all rights, claims, interests, liens and demands, whatsoever of the parties, or of any one of them, concerning or affecting said real property, and *may award full and complete relief,* whether *legal or equitable,* to the several parties, and to each of them, *as fully and with the same force and effect as a court might or could in any other or different action* brought by the parties, or any one of them, *to enforce such right,* claim, interest, lien or demand, *and the judgment or decree of the court* when so rendered *shall be as effectual between the parties thereto as if rendered in any other, different or separate action* prosecuted therefor." This broad and far-reaching language of a remedial and beneficial statute, to be liberally construed, evinces a legislative intent to permit of the determination (concisely stated) in one action of any and all rights, whether legal or equitable, of any litigant affecting the title to the real property involved in the proceeding; and Section 1521, supra, and the rulings of the courts interpreting said section and applying the provisions of the code to suits to quiet title governed by the provisions of the statutes prior to said amendment of 1909, must be held to stand modified in so far as they have been affected by said amendment. Plaintiff's reply alleged facts in answer to defendants cross-petition presenting certain alleged superior rights (be they denominated liens or otherwise) of an equitable nature to the rights of defendants in and to the real estate involved in this litigation. Such issues went to trial on the cross-petition and the reply. Under the provisions of said amendment of 1909, we have held, in proceedings to quiet title, a plaintiff may, in his reply, seek to set aside a judgment obtained by fraud [Wm. H. Johnson Timber & Realty Co. v. Belt, 329 Mo. 515, 521, 46 S. W. (2d) 153, 155(6) stating: "In such case the judgment so assailed should be deemed directly and not collaterally attacked;" a case where defendants replied to the new matter in plaintiff's reply] or ask damage by way of counterclaim because of fraudulent conduct of defendant in obtaining title to the property [Clark Real Est. Co. v. Old Trails Inv. Co., 335 Mo. 1237, 76 S. W. (2d) 388, where plaintiff dismissed its petition]. These cases give force and effect to said amendment of

1909, and Stock v. Schloman, supra, is not to be followed in so far as in conflict herewith.

Defendants' printed argument mentions plaintiff's plea of estoppel *in pais* to defendants' claim of title to the lands. This is an equitable defense in proceedings to quiet title [Schneider v. Schneider, 284 Mo. 314, 326, 224 S. W. 1, 2(2); Davis v. Lea, 293 Mo. 660, 667(1), 239 S. W. 823, 824(1); McQuitty v. McQuitty, 332 Mo. 1057, 1060(2), 61 S. W. (2d) 342, 343(3)], and may, as other equitable defenses, be properly presented in a reply to affirmative allegations of title in an answer [Barron v. Wright-Dalton-Bell-Anchor Store Co., 292 Mo. 195, 211(4), 237 S. W. 786, 789(3); Adams v. Boyd, 332 Mo. 484, 488(2), 58 S. W. (2d) 704, 705(1)].

Plaintiff's reply prayed for a determination of title in plaintiff and, in support thereof, certain specific relief in equity and concluded with a prayer for general equitable relief. Should a litigant mistake the relief to which he is entitled in his prayer for special relief, a prayer for general equitable relief permits the granting of such relief, within the pleadings and the evidence, as he may be entitled to [Holland v. Anderson, 38 Mo. 55, 58], and the decisions of this State have been liberal in allowing such relief [Bevin v. Powell, 11 Mo. App. 216, 223, 83 Mo. 365]. Equity, having acquired jurisdiction, will retain it under a prayer for general relief to administer full and complete justice, within the scope of the pleadings and the evidence, between the parties. [McQuitty v. Steckdaub (Mo.), 190 S. W. 590, 592(2); Seested v. Dickey, 318 Mo. 192, 224, 300 S. W. 1088, 1101(15); Gibson v. Shull, 251 Mo. 480, 491, 158 S. W. 322, 325(10).] Real Estate Inst. v. Collonious, 63 Mo. 290, 295 states: ". . . the doctrine is too well settled to admit of either discussion or dispute, that when a court of equity once acquires jurisdiction of a cause it will not relax its grasp upon the *res* until it shall have avoided a multiplicity of suits by doing full, adequate and complete justice between the parties. It will not content itself in this regard by any half way measures; it will not declare that a party has been defrauded of his rights and then dismiss him with a bland permission to assert, at new cost and further delay, those rights in another forum." [See, also, Munford v. Sheldon, 320 Mo. 1077, 1086(4), 9 S. W. (2d) 907, 911(13).] No attack was made on the reply by any pleading below, and the case proceeded as though the allegations of fact therein were at issue, although plaintiff evidently was mistaken as to the specific relief to which he was entitled. We deem the reply sufficient to authorize relief within the allegations of fact substantiated by the evidence under the circumstances.

The foregoing disposes of several contentions of defendants common to the specific assignments of error covering the relief granted by the chancellor.

■ Defendants also contend the allowance to plaintiff for the amount paid at the void administrator's sale and interest was outside the issues made by the pleadings and error. Plaintiff's reply "sets up . . . that plaintiff's grantee, Emma Moulder (who was the widow of said George J. Moulder) had purchased in good faith at the administrator's sale and that the purchase price paid by her had been applied to the payment of debts allowed against the estate of said George J. Moulder . . ." (quoted from defendant's statement); that said debts had been adjudged claims against said lands superior to the claims of defendants, and prayed, as heretofore stated, for general equitable relief. The reply alleges and the evidence establishes facts entitling plaintiff to subrogation, to which, under his prayer for general equitable relief, he was entitled [First National Bk. & Trs. Co. v. Bowman, 322 Mo. 654, 676(4), 15 S. W. (2d) 842, 853(14); Netherton v. Farmers' Ex. Bk., 228 Mo. App. 296, 298, 63 S. W. (2d) 156, 158(4)], unless precluded therefrom under some other issue in the case. Defendants contend this issue is ruled in Moore v. Mansfield (Mo.), 286 S. W. 353, 354(5), which was an action at law. We have ruled this is a case in equity.

What we have heretofore said, under the allegations and prayer in plaintiff's reply and the facts adduced at the trial, likewise results in the denial of defendant's assignment that the admeasurement of dower was without the issues and error.

■ Defendants assign error in the allowance to plaintiff for improvements. Section 1384, Revised Statutes 1929 (Mo. Stat. Ann., p. 1601), provides, in substance, if a judgment or decree of dispossession shall be given in an action in ejectment, "or in any real action in favor of a person having a better title thereto, against a person in the possession," of any lands such person may recover "compensation for all improvements made by him in good faith on such lands. . . ." "The reply sets up . . . that plaintiff obtained a warranty deed from said Emma Moulder and, under an honest belief that he acquired good title, went into possession of the lands and made valuable improvements thereon. . . ." [Quoted from defendants' statement.] In addition the reply sets forth the length of plaintiff's possession, the kind and value of the improvements, and asks general equitable relief. We think, absent any attack on the pleading below, the allegations sufficient to meet the requirements of Section 1385, Revised Statutes 1929 (Mo. Stat. Ann., p. 1605).

■ By going to trial without objection defendants waived plaintiff's failure to verify the reply. [49 C. J., p. 841, sec. 1241; Scott-Force Hat Co. v. Hombs, 127 Mo. 392, 401, 30 S. W. 183; Huntington v. House, 22 Mo. 365; Handley v. Chicago, R. I. & P. Ry. Co., 55 Mo. App. 499, 505.]

■ An easement over 108 acres of the "Rains" land has been duly

condemned, in proceedings instituted prior to the commencement of the instant action against all the parties herein, plaintiff and defendants, and the award therefor, towit, $17,500, awaits the order of distribution. The chancellor found that of the total compensation of $4,000 allowed plaintiff for improvements, $1,700 thereof was allowed for improvements on that portion of the lands condemned. The improvements represented by the $1,700 were removed, and the land over which said corporation acquired an easement is now inundated. Defendants contend the granting of compensation to plaintiff for improvements within the condemned area, impressed against defendants' title a charge not represented by value, and was error. The contention is based on the measure of compensation allowable for improvements made in good faith by an occupying claimant upon land—that is, the amount by which the value of the land is enhanced by the improvements. [Seibel v. Higham, 216 Mo. 121, 143, 115 S. W. 987, 994; Sires v. Clark, 132 Mo. App. 537, 538, 112 S. W. 526, 527.] The Union Electric Light & Power Company condemned an easement only. Prior thereto plaintiff possessed rights against defendants' fee simple title for the improvements. Defendants retain their title in fee. The change in the form of the improvements on the condemned land to money in the registry of the Federal court did not result in the extinguishment of the value of the improvements. Plaintiff, of course, is entitled to but one satisfaction for their value, but, the fact that plaintiff and defendants may assert their respective rights against the fund in the Federal court [Ross v. Gates, 183 Mo. 338, 347(2), 81 S. W. 1107, 1108(2); Murphy v. Barron, 286 Mo. 390, 408, 228 S. W. 492, 497(11); Hilton v. St. Louis, 99 Mo. 199, 206(2), 12 S. W. 657, 659(2); Butler County Railroad Co. v. Barron, 173 Mo. App. 365, 368, 158 S. W. 872, 873(1)] should not destroy plaintiff's rights against defendants' title to the land. While the situation does not exist in this case, instances are readily conceivable (resulting, for instance, from a consideration of special benefits) where the application of the rule contended for by defendants (towit: the removal of improvements by the condemnor deprives the occupying claimant of his rights against the owner's title to compensation therefor) would deprive one in plaintiff's position of his right to compensation for improvements accorded full consideration in the condemnation proceedings and for which the owners of the fee would receive full value, reflected in the enhanced value of the land after the completion of the project for which a portion of the land was condemned. We rule the point against defendants.

■ Defendants contend that there must be a decree of dispossession against the occupying claimant before such claimant is entitled to the obtention of compensation for improvements under Section 1384, supra. Illustrative of the cases cited is Anderson v. Sutton, 308 Mo.

406, 412(1), 275 S. W. 32, 33(1), to the effect that when the defendant, in ejectment, does not claim title from or through the plaintiff, an independent action must be brought to recover for the improvements; and that the value of the improvements cannot be adjudicated in the ejectment suit proper. However, in ejectment proceedings between an heir of a deceased—the common source of title—and a purchaser at a void administrator's sale, the court may, under proper pleadings, take an account between the parties, charge the purchaser with the rents and profits of the premises, and credit him with the value of the improvements, the amount of the purchase money and interest, and award the heir possession upon payment of the balance due. [Mobley v. Nave, 67 Mo. 546, 549(3); Gen. Stat. 1865, p. 609, secs. 20 and 21, now Secs. 1384, 1385, supra. See, also, Evans v. Snyder, 64 Mo. 516, 518; Sims v. Gray, 66 Mo. 613; Ainge v. Corby, 70 Mo. 257.] The statement in Johnson v. Adams, 7 S. W. (2d) 1010, 1011(2), to the effect that, in an action in ejectment, instituted by the heirs of an intestate deceased against an occupant claiming under a deed from the widow of said deceased, who purchased at a void administrator's sale of the homestead, such occupant might not recover any part of the value of the improvements, because he does not claim under the plaintiffs, is based upon Anderson v. Sutton, supra. No mention is made of Mobley v. Nave, supra, and other cases to like effect. In Anderson v. Sutton there was no pretense Mr. Sutton claimed the land under Mr. Anderson, but he claimed through Boone County [308 Mo. l. c. 413(3), 275 S. W. 33(3)]. We think, under the facts, the ruling in Mobley v. Nave, supra, correct.

The decree vests title, but not possession, in defendants. Plaintiff's reply makes no offer to do equity or surrender possession to defendants. We think in equity, with the title decreed in defendants, plaintiff is not to be deprived of his right to compensation for improvements through the failure of defendants to ask for possession. SHERWOOD, J., in Whelan v. Reilly, 61 Mo. 565, 569, states ''The true meaning of the rule . . . that 'he who seeks equity, must do equity' is simply this: that where a complainant comes before a court of conscience invoking its aid, such aid will not be granted except upon equitable terms. These terms will be imposed 'as the price of the decree it gives him.' The rule 'decides nothing in itself' for you must first inquire what are the equities which the plaintiff must do in order to entitle him to the relief he seeks.'' [See, also, Paquin v. Milliken, 163 Mo. 79, 103(3), 63 S. W. 417, 424(3); Haydon v. St. Louis & S. F. Railroad Co., 222 Mo. 126, 135, 121 S. W. 15, 17(a), stating, under a general offer to do equity, the chancellor ''may let conscience have full play in doing her perfect work in disentangling the relations of the parties, and in placing them where they were before as nigh as may be.''] All relief within the fair

intendment of the pleadings sustained by the evidence, may be granted under a prayer for general relief [Thompson v. Lindsay, 242 Mo. 53, 77(g), 145 S. W. 472, 480(15)]. And, although there was no offer to do equity in the petition, a judgment imposing such an obligation was upheld in Gibson v. Shull, 251 Mo. 480, 491, 158 S. W. 322, 325(10). We rule, therefore, that the decree allowing plaintiff compensation for improvements should have been conditioned upon plaintiff's surrender of possession of the premises within a reasonable time, except so much thereof as he may be entitled to retain in possession under the conveyance from the widow of George J. Moulder.

■ The final settlement in the estate of George J. Moulder, deceased, shows all demands and expenses paid. The $5,382.86, purchase price for the two tracts of land sold at the void administrator's sale was applied to the payment of said demands and expenses. The court decreed plaintiff subrogated to the rights of those whose debts were satisfied out of said $5,382.86. Defendants, conceding the payments inured to their benefit, nevertheless present several assignments of error against plaintiff's right to subrogation.

First. No action having been instituted with respect to the rights of plaintiff and defendants in the real estate here involved until 1931, defendants, relying on the provisions of Section 862, Revised Statutes 1929 (Mo. Stat. Ann., p. 1143), barring actions not instituted within five years "for any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated," assert plaintiff's right of subrogation is barred. Defendants state they have been unable to find any adjudicated case on the precise point.

Aside from the fact that the Statute of Limitations was not made an issue in the case by any pleading filed and was first injected near the close of the case in a motion to strike certain evidence for the reason plaintiff's claim for subrogation was barred by the Statute of Limitations, we think defendants' contention not sound.

Among the cases cited by defendants on this issue, Petty v. Tucker, 166 Mo. App. 98, 101, 148 S. W. 142, 144, appears to be the most analogous. That case holds one paying off a mortgage on real estate of an insane person to prevent foreclosure, the mortgage being thereupon released of record, may not maintain an action, founded upon such payment, after the expiration of five years for the amount thus paid and for subrogation to the rights of the original mortgagee.

We think the uninterrupted possession of plaintiff and his grantor of the real estate here involved distinguishes the instant case from Petty v. Tucker, supra. Plaintiff does not seek a personal judgment against defendants. His rights go only against the real estate in his possession under a claim of title, and out of this real estate (or such property as it may have been converted into) he will realize such

satisfaction as he may receive. Hopkins v. Cockerell, 2 Grat. (43 Va.) 88, is to the following effect: "In 1796, H . . . sold to B, his right and title to a tract of land; . . . *and covenanted to convey that right when B should pay the purchase money*; for which B. executed his bonds to H. In 1797, N purchased B's bargain, and agreed by parol with H to take B's place; and in the same year paid· H $300 in part of the purchase money. N died in 1815, not having received a conveyance or paid the balance of the purchase money; and his executors, under a power in his will, sold the land. In 1832, a suit was brought by an assignee of one of the devisees of N to obtain his portion of the purchase money remaining unpaid on the last sale, to which H was made a party defendant, and answered the bill; and then filed a cross bill, setting up his claim to a lien upon the land for the balance of the purchase money. To this cross bill the representative of N in 1834 pleaded the Statutes of Limitations. Held, the statute is no bar to the claim of H." Plaintiff's situation is, we think, analogous to that of a pledgee in possession. "Where property is pledged for the payment of a debt, the pledgee's right to hold the property and apply it to the discharge of the debt does not become barred by the Statute of Limitations as long as the pledge continues and the debt is unpaid; and this is true, although the statute has run against the obligee's right of action to recover the amount of the debt." [37 C. J. 841.] "The Statute of Limitations affects only the personal remedy against the pledgor." [New York Life Ins. Co. v. Kansas City Bank, 121 Mo. App. 479, 489, 97 S. W. 195, 196.]

We have held the effect of defendants' answer, asking the quieting of title in defendants, was to seek the removal of the cloud of the administrator's deed and the deed of plaintiff's grantee from defendants' title. Bramhall v. Bramhall (Mo.), 216 S. W. 767, was a suit to quiet title. The Statute of Limitations was interposed as a defense. The court held the uninterrupted actual possession of plaintiff must be given consideration; stating (l. c. 769); "*Whatever has been ruled regarding the bar of the statute in equitable actions was not meant to ignore the effect of possession, where the title to land is involved.*" (Italics ours.) The discussion is concluded (l. c. 770): ". . . whether this action is regarded as one in equity purely or as based on our statute for quieting titles, it is not barred by the Statutes of Limitations, according to the decisions of this court applicable to either view."

We need not discuss other possible reasons for disallowing the assignment.

Second. The administrator attempted to sell and deed to Emma Moulder two tracts of land—the "Rains" land and the "Mauss" land. The two tracts lie about six miles apart. The ap-

praisal of the real estate for the purpose of the administrator's sale valued the "Rains" land at $3,844.90 and the "Mauss" land at $1,537.96, a total of $5,382.86. The two tracts were sold as one and, in attempting to effect the sale, were deeded, exclusive of the dower interest and subject to a $2,500 existing mortgage, by the administrator to Emma Moulder in consideration of $5,382.86—the total appraised value. Plaintiff was decreed entitled to subrogation for so much of the purchase price paid by Emma Moulder for the "Rains" lands as was actually used in the discharge of the obligations of the estate of George J. Moulder, deceased, and that sum was found to be $5,382.86, the total purchase price. Defendants contend plaintiff's right of subrogation, under the peculiar facts of this case—the purchase price equaling the appraised value—should not exceed $3,844.90, the appraised value of the "Rains" land. Plaintiff's equitable claims against the real estate here involved for the purchase price are derived through Emma Moulder, who, in turn, derives such claims as she may have had through the creditors whose obligations were discharged out of the purchase money for the two tracts of real estate. [Shanklin v. Ward, 291 Mo. 1, 19(4), 236 S. W. 64, 68(4).] Whatever may have been the rights of Emma Moulder prior to her conveyance to plaintiff, the equities of the parties interested in the different tracts now require the allocation of her rights to the respective tracts of land, as much so as if she had acquired her rights under separate contracts involving distinct considerations. The rights of the heirs as well as the rights of the purchaser should be considered. If Mr. Mauss has acquired a good title to the "Mauss" land, the obligations of the George J. Moulder estate have been discharged to a certain extent out of the "Mauss" land; and to impose a charge against the real estate here involved for the total sum of $5,382.86 duplicates to the extent the "Mauss" land discharged obligations of said estate the withdrawal of rightful inheritance from the heirs. If Mr. Mauss did not acquire a good title from Emma Moulder, his rights are entitled to protection; but the application of the ruling of the chancellor on the instant issue would logically result in either eliminating Mr. Mauss from all claims for subrogation (manifestly unjust to Mr. Mauss) or in also allowing Mr. Mauss subrogation for $5,382.86 (manifestly unjust to the heirs). The only logical conclusion to be reached from a consideration of the appraised value of the real estate and the purchase price at the void administrator's sale is that Emma Moulder paid for the "Rains" land $3,844.90 and for the "Mauss" land $1,537.96. It follows that the land in question discharged but $3,844.90 of said $5,382.86 total obligations. No question, we think, could have arisen on this issue had different purchasers purchased the individual tracts or had the two tracts been sold separately to one purchaser and so reported to the court. Giving each tract in-

volved in the sale credit for the proportionate amount of the obligations of the estate discharged by its sale accords with justice and equity. The decree should be modified accordingly.

Third. Defendants, conceding plaintiff acquired Emma Moulder's quarantine rights [Sec. 338, R. S. 1929, Mo. Stat. Ann., p. 224; Sec. 321, R. S. 1929, Mo. Stat. Ann., p. 207; Graham v. Stafford, 171 Mo. 692, 698, 72 S. W. 507, 509], take the position that substantial justice requires plaintiff to forego interest allowed by the chancellor on said $5,382.86 from April 10, 1923, because, in the contemplation of the parties, neither dower nor quarantine existed, as had it not been for the mutual mistake dower would have been admeasured and plaintiff would have been chargeable with the reasonable rental value of that portion of the real estate not passing under the deed to him. The widow, during the continuance of the right of quarantine, is not chargeable with the taxes on the land [Grogan v. Grogan (Mo.), 177 S. W. 649(5); Shoultz v. Lee, 260 Mo. 719, 726, 168 S. W. 1146, 1147; Krug v. Bremer (Mo. App.), 11 S. W. (2d) 1096, 1097(2)] or the interest on a debt secured by the land [the Grogan and Krug cases, supra]. In the Shoultz case interest was allowed the widow on purchase money paid for the home place under circumstances practically identical with the instant issue. Plaintiff's reply alleged and the proof established that he had paid the interest on the $2,500 mortgage and taxes on the land. The decree makes no allowance therefor. Under the circumstances, we think the allowance of interest on $3,844.90 from April 10, 1923, accords with the substantial equities between the parties.

The judgment and decree of the circuit court is reversed and the cause remanded with directions to modify the same in conformity herewith. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.